This is a workmen's compensation case.[1]
In April 1991, Kerry C. Ivie filed a complaint seeking workmen's compensation benefits from Winfield-Carraway Hospital (Carraway), by alleging that she was injured in March 1988, during the course of her employment, and that as a result, she was permanently and totally disabled. Following ore tenus proceedings, the trial court found that Ivie was not disabled, and it entered a judgment in favor of Carraway. Ivie appeals.
Our review in this case is limited to determining whether there is any legal evidence to support the trial court's findings, and, if so, whether any reasonable view of that evidence supports the trial court's judgment. Ex parte EastwoodFoods, Inc., 575 So.2d 91 (Ala. 1991). Further, "[w]here one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome." Ex parte Veazey, 637 So.2d 1348, 1349 (Ala. 1993).
In its lengthy and detailed order, the trial court made the following pertinent findings of fact:
 "Mrs. Ivie claimed that she injured her lower back when she was attempting to move a patient on March 28, 1988. She claimed further that her back injury had caused her to develop a condition or syndrome known as fibromyalgia, which the Court understands to involve total body pain. She claimed to be totally and permanently disabled as a result of her fibromyalgia.
". . . .
 "At the trial of this case, Mrs. Ivie testified that she suffers from constant pain. She described her physical limitations in some detail, testifying that she has constant pain which limits her ability to function. She said that her pain is so severe that she cannot stand to be touched, that she has episodes of severe pain in her hips and shoulders, chest and back, that she cannot lift or even sit for long periods of time. She said that on a scale of one to ten, at best her pain is a five, and at worse it is a ten. Having heard and observed her as a witness and for the reasons hereafter set forth, the Court did not believe Mrs. Ivie's testimony concerning her limitations and complaints of pain.
 "[Carraway] presented the testimony of Terry Holder, who testified that he had had Mrs. Ivie under surveillance for nearly a month since her claimed injury and just prior to trial. Mr. Holder testified that the films he presented to the Court were excerpts from several consecutive days of surveillance of Mrs. Ivie. The Court understands that all of the surveillance tapes were made available to [Ivie] and her counsel prior to trial, and no objection was made by [Ivie] that the tape offered into evidence was not comprised of excerpts from the many surveillance films. [Carraway] offered the surveillance film and it was admitted into evidence over [Ivie]'s objection. Mrs. Ivie admitted that the person in the film was her.
 "The film clearly demonstrated that Mrs. Ivie could in fact do the very things that she testified that she could not do. . . . The film specifically belied Mrs. Ivie's claim that she is in constant pain.
 "Mrs. Ivie called Dr. Timothy Jordan, an emergency room physician who has over the course of years since Mrs. Ivie's incident had occasion to see her numerous times in the Emergency Department of [Carraway]. . . . Dr. Jordan opined that . . . Mrs. Ivie was 100% disabled due to her fibromyalgia, and that her fibromyalgia had been caused by the March 28, 1988 incident. His opinion was based solely on Mrs. Ivie's complaints to him of pain. He had not seen the videotape.
 "The Court has also considered the deposition testimony of many physicians who had treated Mrs. Ivie. These include the depositions of Dr. David McLain; Dr. Randall Stewart; Dr. George Hill; and Dr. Jasper Moore. The Court finds that the *Page 1193 
testimony is conflicting amongst the physicians as to whether or not Mrs. Ivie's fibromyalgia was or could have been caused by the back injury which she described. At least two of her physicians, [McLain and Stewart], believed her to be employable.
 "The Court further finds that the physicians who diagnosed Mrs. Ivie's condition as fibromyalgia did so based solely upon her physical complaints and not upon any objective tests or procedures. Moreover, none of the physicians had had the benefit of viewing the videotape of Mrs. Ivie functioning when she did not think she was being observed. . . . The Court finds Mrs. Ivie's testimony regarding her physical complaints to be completely refuted by the surveillance video offered by [Carraway].
 "Finally, both parties offered the deposition testimony of vocational experts. [Ivie]'s expert, Mr. William A. Crunk, assigned [her] a 100% disability rating. Mr. Crunk had not seen the surveillance video tape which demonstrated what Mrs. Ivie actually could do, and like many of the physicians, based his opinions exclusively on Mrs. Ivie's complaints, and medical records. [Carraway]'s expert, Marcia Schulman, testified that according to her review of Mrs. Ivie's records, a personal interview with her, and the surveillance tape, that Mrs. Ivie was essentially not disabled at all. The Court agrees with Ms. Schulman's assessment of Ms. Ivie."
(Emphasis added.)
Ivie first contends that the trial court erred by failing to find that she is totally disabled. She argues that a reasonable view of the evidence does not support the judgment and that one is not required to be completely helpless in order to be totally disabled within the meaning of the workmen's compensation statute, citing Asplundh Tree Expert Co. v.Latham, 656 So.2d 839 (Ala.Civ.App. 1995). Ivie also argues that an injured worker's own complaints of pain are legal evidence which can support a finding regarding disability, again citing, Asplundh Tree Expert Co., supra. While these are both correct statements of the law, it is also true that the trial court, which has the duty of determining the extent of one's disability, is not bound by expert testimony, but must consider all of the evidence before it, including its own observations, and interpret it to its own best judgment. GenpakCorp. v. Gibson, 534 So.2d 312 (Ala.Civ.App. 1988). Moreover, the trial court is free to choose which evidence it believes, and when conflicting evidence is presented, the findings of the trial court are conclusive, if supported by the evidence.Acustar, Inc. v. Staples, 598 So.2d 943 (Ala.Civ.App. 1992). Also, the determination of the extent of the disability is a discretionary function of the trial court, and its determination will not be disturbed on appeal if there is evidence to support it. M.C. Dixon Lumber Co. v. Phillips,642 So.2d 477 (Ala.Civ.App. 1994). A thorough review of the record discloses ample evidence supporting the trial court's determination, and at least one reasonable view of that evidence supports the trial court's judgment. Veazey,637 So.2d 1348.
Next, Ivie contends that the trial court erred by allowing the surveillance videotapes into evidence, because, she says, they had not been produced prior to trial in accordance with Rule 34, A.R.Civ.P. It is disputed, however, as to exactly when, and how many of the tapes were offered to Ivie's counsel. Carraway asserts that it had advised Ivie's counsel that it had the tapes prior to the trial, that it made the tapes available for review, and that it even supplied one of the tapes to Ivie's counsel. Ivie concedes in brief that one of the tapes was delivered to her counsel four days before the trial, but she argues that several other tapes, which were admitted into evidence, were never made available. Moreover, the trial court specifically found that "[a]ll of the surveillance tapes were made available . . . prior to trial, and no objection was made by [Ivie] that the tape offered into evidence was not comprised of excerpts from the many surveillance films." A videotape "is admissible if it is relevant and if it is properly authenticated and identified." C. Gamble, McElroy's AlabamaEvidence, § 123.06 (4th ed. 1991); see also Large v. Board ofManagers of the City of Birmingham Retirement and ReliefSystem, 623 So.2d 1174 (Ala.Civ.App. 1993); and *Page 1194 Marlar v. Humana Medical Corp. of Alabama, 611 So.2d 1089
(Ala.Civ.App. 1992). Holder, the security employee for Carraway who filmed the videotapes, testified regarding his observations of Ivie and the authenticity of the videotaped excerpts offered into evidence. Ivie has simply failed to show error in this regard.
Finally, Ivie contends that the trial court erred by finding that she is not entitled to future medical or vocational benefits; however, in light of the trial court's finding that Ivie was not entitled to receive permanent disability benefits, the trial court correctly refused to award any future medical benefits. See Raines v. Browning-Ferris Industries of Alabama,Inc., 638 So.2d 1334 (Ala.Civ.App. 1993).
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
[1] The review of this case is governed by Ala. Code 1975, § 25-5-1
et seq., the Workmen's Compensation Act, which was in effect before the amendments of May 19, 1992.