Nancy Keen ("worker") filed a complaint seeking worker's compensation benefits from her employer, Showell Farms, Inc. (the "company"), alleging an on-the-job injury in October 1992.[1]
The worker began working for the company in 1986, grading chicken breasts. She continued that work until she was injured after slipping and falling on her elbow. As a result of the accident, she underwent surgery. According to her surgeon, she reached maximum medical improvement on December 15, 1993.
The worker testified that she returned to work as a grader and was reassigned to work "pinning feathers." That job involved using a knife to remove the feathers from chickens. At the time of trial, the worker was assigned to "doing necks," which involved inspecting chicken necks and removing the bad ones. She testified that she can only use her right hand, and that when she falls behind in production, she just lets the chickens drop down a hole. She is restricted to lifting less than five pounds with her injured hand.
During trial, the worker was asked why she held her hand in a certain position, and she stated that it hurt, trembled, and jerked. When asked to rate her pain on a scale of 1 to 10, she said that her pain would be "high in 10" because she hurt all the time. She cannot use her injured hand and cannot use a broom, one of her specific job duties. She suffers from carpal tunnel syndrome in both hands. She is not able to work as hard as she did before the injury, and her coworkers sometimes help her. Her productivity is "a lot less than" it was before the injury. Her hands and arms hurt, she wears braces on both of her arms, and she is restricted to light duty work. She is on medication while working.
At the time of her injury, the worker's pay was $5.75 per hour, which did not include a bonus of $.60 per hour. After the injury, her pay was $6.00 per hour, but she does not receive the bonus if she is out of work for any reason, even to visit her private physician for treatment or therapy.
At the company's request, Dr. Sheryl Ranson conducted a vocational assessment of the worker. In stating her conclusions, Dr. Ranson testified:
 "[Showell] had made accommodations for [the worker's] physical limitations.
 "However, if she should leave Showell Farms, then, it was my opinion that she would be limited in terms of the occupations that she could do, based on . . . her physical limitations, her age, her educational level, and her work history.
 "And if that occurs, then, I believe her vocational impairment rating would be in the 40 to 50% category."
Dr. Ranson further stated that the worker was functionally illiterate, that her math scores were at or about the second grade level, that at times she had difficulty holding things with her hand, and that she would be *Page 785 
a difficult candidate for employment outside the company.
At the request of the worker, Mrs. Oakes, a rehabilitation counselor, also conducted an employment assessment. Mrs. Oakes testified that the worker was 59 years old and had completed the third grade, and had not obtained a GED. Her prior work history involved unskilled manual labor. Mrs. Oakes said that the worker is limited to working with her right arm and that at the time Oakes observed her, she was having trouble with that arm. Mrs. Oakes observed the worker at work and concluded that her work was sheltered employment, not competitive employment, because she was not working at the productive level of the other workers. However, with the exception of the bonus of $.60 per hour, she is paid at the same level as the other workers. Mrs. Oakes said it was relevant that the worker had been on medication since the injury. She gave her opinion that the worker was performing one-half to two-thirds less work than the other workers and that the job performed by the worker at the present time does not exist in the job market or economy. Based upon the worker's age, previous employment, educational level, testing, and lack of job opportunities outside the company, Mrs. Oakes believed that the worker was not employable. She described the worker's job as "a collection of keeping-busy work."
Out of the almost 13,000 job titles listed in The Directoryof Occupational Titles, Mrs. Oakes said she did not know of one that the worker could do. Since the injury, the worker had received the same pay raises as other employees and had not received any raise particular to her. Mrs. Oakes said that the worker shows up and that the company pays her. Because the worker has an I.Q. in the mild to moderately retarded range and has no transferrable skills, Mrs. Oakes did not believe that the worker had the ability to be vocationally retrained. Mrs. Oakes stated that the worker suffers a 100% loss of earning capacity outside the sheltered employment at the company.
The worker's orthopedic surgeon testified that she had a medical disability or impairment of 10% to the extremity or 6% to the body as a whole and that she could do the work she had done in the past.
The trial court entered a judgment in pertinent part as follows:
 "[The court finds that plaintiff] suffered an on the job injury wherein she slipped and fell injuring her left elbow and portions of her right hand and arm. Plaintiff's average weekly salary at the time was $220.00 per week.
 "Although the other evidence would indicate that Plaintiff is 100% disabled due to such injury, under Section 25-5-57(a)(3)(i) of the Code of Alabama the Court shall consider only the Plaintiff's physical impairment which is 6% to the body as a whole as established by Dr. Robert Moore.
The 6% of her weekly wage of $220.00 x 2/3 equals $8.84 per week. Therefore, permanent partial disability payments of $8.84 per week for 300 weeks are ordered to be paid by Defendant to Plaintiff. Plaintiff's attorney is awarded a 15% attorney's fee from said recovery. Defendant is ordered to pay any and all reasonable and necessary medical expenses arising from said injury. The Court having found that Plaintiff is continued in employment by Defendant at a wage of at least $6.00 per hour where Plaintiff was earning $5.50 per hour at the time of the accident and that Section 25-5 etc. applies in this case, should Plaintiff no longer be employed by Defendant during the 300 weeks then Plaintiff may petition the court for re-evaluation of her disability rating in accordance with said Section." (Emphasis added.)
The foregoing order is unclear. The trial court did not set out explicitly whether it found that the worker had a permanent total disability or a permanent partial disability. The order indicates that the court would have found that the worker "is 100% disabled," but for the fact that the worker returned to work at a higher post-injury wage. The court evidently concluded that the worker's return to work automatically triggered § 25-5-57(a)(3)(i). However, the trial court was authorized to find that the worker was permanently and totally disabled despite her return to the workplace. See *Page 786 Sumiton Timber Co. v. Anderson, 620 So.2d 54
(Ala.Civ.App. 1993); Southeastern Commercial Printing Corp. v. Sallas,575 So.2d 1151 (Ala.Civ.App. 1991). " 'An employe[e] who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' " Brunson Milling Co. v.Grimes, 267 Ala. 395, 400, 103 So.2d 315, 318 (1958) (quotingLee v. Minneapolis Street Ry., 230 Minn. 315, 320,41 N.W.2d 433, 436 (1950)).
Section 25-5-57(a)(3)i., referred to in the judgment, states:
 "i. Return to Work. — If, on or after the date of maximum medical improvement, . . . an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability. Notwithstanding the foregoing, if the employee has lost his or her employment under circumstances other than any of the following with a period of time not to exceed 300 weeks from the date of the injury, an employee may petition a court within two years thereof for reconsideration of his or her permanent partial disability rating."
(Emphasis added.) Section 25-5-57(a)(3)i. comes into play only if the court first finds that the worker is permanentlypartially disabled. However, if the court finds that the worker is permanently totally disabled, then § 25-5-57(a)(3)i. is not applicable. Section 25-5-57(a) sets forth the following four schedules of compensation: (1) temporary total disability; (2) temporary partial disability; (3) permanent partial disability; and (4) permanent total disability. The return-to-work provision is found only in subparagraph (3) — "permanent partial disability." Therefore, in order to apply §25-5-57(a)(3)i., the court must first find the worker permanently partially disabled.
The determination that the worker's injury is a permanent partial disability limits the number of weeks of compensation. However, a determination that the worker suffers a permanent total disability entitles her to receive compensation during such total disability, i.e., during her lifetime. Although the company is commended for its efforts in going the extra mile to provide the worker with employment, the legislature has determined that the return-to-work provision limits compensation only for a worker who suffers from a permanent partial disability. The statute does not permit the return-to-work provision to limit compensation for a permanent total disability.
Because the court's judgment is unclear, we remand this cause with directions for the trial court to determine,first, whether the worker is permanently partially disabled or permanently totally disabled. If the court determines that the worker suffers a permanent partial disability, then it should apply the return-to-work provision of § 25-5-57(a)(3)i. If, however, the court finds that the worker is permanently and totally disabled, the return-to-work provision of §25-5-57(a)(3)i. is not applicable.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ., concur.
[1] This case is governed by the Workers' Compensation Act, Ala. Code 1975, § 25-5-1 et seq., and the amendments effective August 1, 1992.