Jimmy G. Fuller sued his employer, BAMSI Inc., on September 26, 1994, seeking to recover workers' compensation benefits for an injury he had sustained on September 26, 1992, during the course of his employment. Following an ore tenus proceeding, the trial court, on December 12, 1995, found, among other things, that Fuller had suffered a 15% permanent physical impairment and, pursuant to § 25-5-57(a)(3)i., Ala. Code 1975, that he had suffered a permanent partial disability, and ordered benefits accordingly. Fuller appeals.
At the outset, we note that because of the date of Fuller's injury, this case is governed by the new Workers' Compensation Act. The new Act provides that on appeal the review of the proof and the consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when a court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Our supreme court "has defined the term 'substantial evidence', as it is used in § 12-21-12(d), to mean 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' " Ex parte TrinityIndustries, Inc., 680 So.2d 262, 268 (Ala. 1996), quoting Westv. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). Further, we "will view the facts in the light most favorable to the findings of the trial court." Whitsett v.BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App. 1994). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995).
Fuller was employed with BAMSI as a plumber/pipe fitter. In December 1989, Fuller ruptured a disc in his neck during the course of his employment with BAMSI. He had surgery to repair the ruptured disc in February 1992, and following the surgery he returned to work with no limitations or complications. On September 26, 1992, Fuller suffered the injury made the basis of his complaint. He testified that he pulled on a pipe wrench to loosen a portion of pipe and felt a "bad pain" in his back. He attempted to turn the wrench again but was unable to do so and had to stop. The pain continued and increased; Fuller reported the injury and sought medical treatment at a local emergency room. He was initially diagnosed with a pulled muscle, given muscle relaxers, and sent home.
Fuller continued to experience pain and was referred to Dr. L.J. Davis for treatment on October 5, 1992. Following an initial examination, Fuller began receiving Feldene and physical therapy, which consisted of ultrasound and heat. He was restricted to a 30-pound weight-lifting limit, with no bending at the waist of more than 45 degrees. A follow-up examination revealed that Fuller continued to experience pain and an MRI was ordered. The MRI revealed that Fuller had "a large right-sided disc herniation" at L4-5.
Fuller was then referred to Dr. Frank Haws, a neurosurgeon, on October 29, 1992. Dr. Haws performed surgery on Fuller on December 1, 1992, to remove the extruded disc at L4-5. Following the surgery, Fuller returned to Dr. Haws, complaining of pain in his lower back and right leg. A lumbar myelogram revealed that Fuller had a herniated disc at L5-S1, and a second surgery was performed on December 11, 1992, to remove this extruded disc. Fuller returned to Dr. Haws in February 1993, again complaining of pain in his lower back and right leg. Another lumbar myelogram was performed, which revealed a "persistent defect" at the L5-S1 region. Dr. Haws suggested that if Fuller were to have a third surgery to his back, he should consider a fusion from the L5 to the sacrum in order to restrict the motion and to reduce the likelihood of a recurrence. Dr. Haws saw Fuller again on March 17, 1993, and noted that Fuller was "greatly improved" with "minimal discomfort." Dr. Haws discharged Fuller to return to work on April 1, 1993, with no restrictions, other than to use good posture and to sit straight and stand straight. Dr. Haws testified that Fuller had suffered a 15% permanent medical *Page 130 
impairment as a result of the herniated L5-S1 disc with the recurrent defect.
Fuller sought a second opinion regarding his condition from Dr. Calame Sammons, an orthopedic surgeon, in May 1993. Dr. Sammons diagnosed Fuller with multilevel degenerative disc disease with segmental instability at the L4-5 and S-1, a degenerative disc at the L3-4, and a possible recurrent herniated disc with nerve root asymmetry at the right L5-S1. Dr. Sammons recommended a back-strengthening program in an attempt to alleviate some of Fuller's pain; however, he suggested that, should the pain continue to increase, a surgical exploration should be performed at the L4-5 and S-1 level on the right side, as well as a three-level lumbar fusion. Dr. Sammons described the three-level fusion as a "salvage" operation that would not allow Fuller to return to work as a pipe fitter. Fuller elected to try the strengthening program, but chose not to have the surgery.
Fuller testified that at the time of trial he was still experiencing pain in his back, hips, and legs. He stated that the pain had gradually worsened and that he could no longer do some activities that he was once able to do, such as mowing the lawn, gardening, jogging, hunting, and household chores. In terms of job performance, Fuller stated that when he returned to work following the surgery, he could only do 40% of what he could do before the injury. He stated that he returned to work rather than have the third surgery because he did not want to lose his job.
Four co-workers testified as to Fuller's physical abilities before the injury as opposed to after the injury. Their testimony was essentially that before the injury he could do the physical work required of him by his job, but that following the injury he was in pain and needed assistance from co-workers in completing his job tasks. Brad Borden testified that Fuller's supervisor, Terry Fincher, was aware of Fuller's condition and instructed the others to assist him when possible. Borden further testified that Fuller could not do 85-90% of the physical work required of the job. Thomas Mathias testified that Fuller could not do 40-50% of the things he could do before the injury. Kerry Voss testified that Fuller's productivity was down 70% following the injury. Norwood Gordon testified that Fuller was unable to do the physical work required of the job and primarily became a "gofer," bringing the others tools and equipment when needed.
Fuller raises several issues on appeal; however, we find one to be dispositive. That issue is whether the term "physical impairment," as it is used in § 25-5-57(a)(3)i., is interchangeable with the term "medical impairment," as assigned by a physician; if it is, then the trial court cannot, when determining an employee's permanent partial disability rating, consider evidence of physical impairment, other than the physician's assigned impairment rating. Because this case involves a permanent partial disability rating and because Fuller returned to work at a wage equal to, or greater than, his pre-injury wage, § 25-5-57(a)(3)i. is applicable. That section reads:
 "Return to Work. — If, on or after the date of maximum medical improvement, . . . an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability."
In its judgment the court found:
 "[T]he Plaintiff has suffered a 15% permanent medical impairment which equates to a 15% permanent physical impairment as a result of the herniated L5-S1 disc as a proximate result of the accident. This conclusion is based on the Alabama Court of Civil Appeals' interchangeable use of the terms 'physical impairment' and 'medical impairment' in cases such as Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala.Civ.App. 1995), and Keen v. Showell Farms Inc., 668 So.2d 783
(Ala.Civ.App. 1995), and the absence of any appellate decision which indicates otherwise."
BAMSI contends that the terms "medical impairment" and "physical impairment" have been used interchangeably by the courts and that in cases where § 25-5-57(a)(3)i. applies the court cannot consider evidence beyond *Page 131 
the impairment rating assigned by the employee's treating physician. In Compass Bank v. Glidewell, 685 So.2d 739
(Ala.Civ.App. 1996), decided by this court after this present appeal had been filed, the employee's treating physician had assigned the employee an impairment rating of 22%; however, the trial court adjusted that rating upward to 34% based on its observations of the employee in court. Compass Bank, the employer, argued that the court, when determining the employee's permanent partial disability, should have considered only the employee's impairment rating as established by the physician. We held that the trial court is not bound to the impairment rating assigned by a treating physician when determining an employee's permanent partial disability rating, stating:
 " Nothing in § 25-5-57(a)(3)i. can be interpreted to mean that the trial court is bound by the physician's assigned physical impairment rating and prohibited from considering its own observations with regard to the impairment and then making adjustments to that rating, so long as it does not consider evidence of vocational disability and the disability rating assigned the employee is equal to the physical impairment rating."
685 So.2d at 741.
"Medical impairment" and "physical impairment" have been used interchangeably in the past in regard to workers' compensation cases; however, whether an impairment rating assigned to an employee by a physician is referred to as a "medical impairment" or as a "physical impairment" it is, nonetheless, an impairment rating assigned by a physician. A trial court is not bound to accept a physician's assigned impairment rating and is free to make its own determination as to an employee's impairment. Checker's Drive-In Restaurant v. Brock,603 So.2d 1066 (Ala.Civ.App. 1992). The impairment rating assigned by a physician is but one factor a court may consider in satisfying its duty to determine the extent of one's disability. The trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, it must consider all the evidence, including its own observations, and it must interpret the evidence in accordance with its own best judgment. Wolfe v.Dunlop Tire Corp., 660 So.2d 1345 (Ala.Civ.App. 1995). To hold that "medical impairment" equates to "physical impairment" for purposes of § 25-5-57(a)(3)i., so that the trial court could not consider evidence of physical impairment, other than the physician's assigned impairment rating, would usurp the trial court's duty to determine disability and would place that duty solely in the hands of the physician. We do not believe that that is the result intended by our Legislature in enacting §25-5-57(a)(3)i.
The record indicates that although the court received evidence of Fuller's physical impairment other than the testimony of Dr. Haws, it was uncertain as to whether it could consider that evidence when determining the extent of disability, pursuant to § 25-5-57(a)(3)i. Therefore, we must reverse the judgment and remand the case to afford the trial court the opportunity to consider the additional evidence regarding Fuller's physical impairment.
REVERSED AND REMANDED.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.