Pascual Domingo sued his employer, Tyson Foods, Inc., on July 27, 1998, seeking to recover workers' compensation benefits for an injury he claimed to have sustained on October 10, 1997, during the course of his employment. Following an ore tenus proceeding, the court, on August 4, 1999, entered an order finding that Domingo had suffered an injury arising out of and in the course of his employment with Tyson and determining that he had suffered a 20% loss-of-earning ability. Tyson appeals following the denial of its postjudgment motion.
Domingo[1] worked for Tyson as a "live hanger." This job included hanging chickens from shackles on a moving line and frequently lifting boxes weighing up to 75 pounds. Domingo testified that while lifting a box of chicken on October 10, 1997, he experienced pain in his right wrist running toward the elbow bend on the top side of his arm. He reported the injury to the company nurse on that day. He testified that the nurse put "some cream" on his hand and then bandaged it and that he then returned to work.
Domingo was first seen by Dr. Johnnie Stevens on November 3, 1997. He informed Dr. Stevens at that time that he had had increasing pain in his right wrist for a period of three months. Dr. Stevens diagnosed Domingo with tendinitis in his wrist. Domingo was again seen by Dr. Stevens on December 23, 1997. Domingo informed Dr. Stevens that a few nights before this visit he had fallen out of bed and had landed on his right wrist. Dr. Stevens noted some minimal swelling in the wrist and stated that the fall could have resulted in a new injury, or an aggravation of the old injury, but that he could not be certain. Dr. Stevens continued to treat Domingo for tendinitis; however, Domingo showed no real improvement and was referred to Dr. Joseph Kendra.
Dr. Kendra, an orthopedic surgeon, first saw Domingo on May 8, 1998. Dr. Kendra's records indicate that Domingo complained of a gradual onset of pain in the right wrist, which was constant and which had become generally worse with activities over the course of approximately eight months. Dr. Kendra diagnosed Domingo with Kienbck's disease in the right wrist. Kienbck's disease is an avascular necrosis of the small lunate bone in the wrist; it causes the lunate bone to lose its blood supply and deteriorate. Dr. Kendra stated that the Kienbck's disease in Domingo's wrist was not the result of a work-related incident. Dr. Kendra referred Domingo to Dr. Joseph Clark.
Dr. Clark, an orthopedic and hand surgeon, first saw Domingo on May 22, 1998. Domingo informed Dr. Clark that he had been experiencing pain in his right wrist for approximately eight months, but he did not give a specific date of injury. Dr. Clark diagnosed Domingo's with Class 3-A Kienbck's disease with some fragmentation of the lunate bone. Dr. Clark stated that it sometimes takes only a matter of months or it can take years for the disease to progress to Class 3-A. Dr. Clark also noted that Domingo had a negative ulnar variance, which is caused by the radius bone being longer than the ulna bone.
Dr. Clark testified in deposition that Kienbck's disease can occur in a number of ways and that a clear etiology is rarely *Page 1289 
diagnosed. He stated that Kienbck's disease is more common among people with a negative ulnar variance who are engaged in repetitive-type work, and that it is most commonly caused by some minor trauma or by repetitive microtrauma due to repetitive use. Dr. Clark also stated that the number of blood vessels that supply blood to the bone is a factor to be considered. He testified that Kienbck's disease usually develops when the negative ulnar variance combines with repetitive microtrauma or a single minor traumatic event. Dr. Clark performed a surgical procedure known as a radial shortening in order to decrease the pressure on the lunate bone so that the bone might revascularize.
When questioned as to whether Domingo's employment at Tyson had caused the Kienbck's disease in his wrist, Dr. Clark stated that he did not know what had caused the condition, but that it was possible. He testified that Domingo's negative ulnar variance and the repetitive nature of his employment "possibly" had caused the Kienbck's disease and that it "may have contributed to [the Kienbck's disease]." When asked whether there was another explanation as to the cause of the Kienbck's disease, other than on-the-job trauma, Dr. Clark responded that he could only speculate, but that it was possible that Domingo's condition was related to an on-the-job-trauma.
Tyson first argues that the trial court erred in failing to make a finding of fact in its order[2] as to whether Domingo's injury had resulted from an on-the-job-accident or from cumulative physical stress as the result of repetitive trauma. We agree. The trial court in a workers' compensation case "`is required to make findings of fact and conclusions of law, and the these findings should encompass each and every issue presented to and litigated in the trial court; where this is not done, the judgment should be reversed.'" Ex parte Valdez, 636 So.2d 401,404 (Ala. 1994), quoting Thompson Co. Contractors v. Cole,391 So.2d 1042, 1045 (Ala.Civ.App. 1980).
Tyson points to the following passage from the trial court's order to argue that its finding was merely speculative and would not support an award of benefits: "The Court finds by clear and convincing evidence that the plaintiff's injury was caused by an on-the-job-accident or cumulative trauma to the wrist on the job." (Emphasis added.) The issue whether Domingo's alleged injury resulted from an on-the-job-accident or from cumulative trauma was presented and was litigated in the trial court. In fact, it appears from the record that Domingo took conflicting positions on the issue; on the one hand he contended that his alleged injury had resulted from an on-the-job-accident suffered on October 10, 1997, and on the other he contended that the alleged injury had resulted from cumulative trauma to the wrist. For example, in his closing arguments to the trial court and in a brief filed in the trial court, Domingo takes the position that the alleged injury resulted from an on-the-job-accident on October 10, 1997; however, in Domingo's questioning of Dr. Clark during his deposition, which was introduced into evidence, Domingo clearly attempts to establish that the alleged injury had resulted from cumulative trauma to the wrist.
We conclude that a finding by the trial court that Domingo's alleged injury "was caused by an on-the-job-accident or cumulative trauma" is tantamount to no finding on the issue at all. When the issue whether an injury resulted from an on-the-job-accident or from cumulative physical stress/trauma is before the court, a finding as to one or the other is necessary because the two scenarios have differing tests as to causation and burdens of proof to be applied.
Justice Houston, writing for our supreme court in Exparte Trinity Industries *Page 1290 Inc., 680 So.2d 262 (Ala. 1996), discussed the differing causation tests applicable to "accidental" injuries as opposed to those applicable to "nonaccidental" injuries. Regarding "accidental" injuries, the court stated:
 "An employee claiming to have been injured by a sudden and traumatic external event (an `accident' in the colloquial sense, e.g., being struck by a falling hammer on a construction site or slipping off a ladder) need only produce substantial evidence tending to show that the alleged `accident' occurred and tending to establish `medical causation,' by demonstrating that the `accident' was a contributing cause of the complained-of injuries and complications."
Id., at 266 n. 3. To establish causation in a workers' compensation case where the injury is nonaccidental, i.e., where the injury was not caused by some sudden and unexpected external event, an employee must satisfy a two-part causation test by producing substantial evidence establishing both (a) legal causation and (b) medical causation. Id.; see also City ofTuscaloosa v. Howard, 55 Ala. App. 701, 318 So.2d 729
(Ala.Civ.App. 1975). To prove "legal causation," one need only establish that "the performance of his or her duties as an employee exposed him or her to a `danger or risk materially in excess' of that to which people are normally exposed in their everyday lives." Exparte Trinity Indus., Inc., 680 So.2d at 267, quoting Howard,55 Ala. App. at 705, 318 So.2d at 732. To establish medical causation, a claimant "must produce substantial evidence tending to show that the exposure to risk or danger proven in step one of the Howard test `was in fact [a] contributing cause of the injury' for which benefits are sought." Id. at 269, quoting Howard,55 Ala. App. at 706, 318 So.2d at 732.
Additionally, there are two burdens of proof to be applied in cases involving "accidental" injuries as opposed to those involving "nonaccidental" injuries. In cases involving "accidental" injuries, "[t]he decision of the court shall be based on a preponderance of the evidence as contained in the record." §25-5-81(c), Ala. Code 1975. However, cases involving injuries that have resulted from gradual deterioration or cumulative-physical-stress disorders shall be compensable only upon "a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment." §25-5-81(c), Ala. Code 1975.
In order for this court to determine whether the injury complained of resulted from an accident occurring on October 10, 1997, or resulted from cumulative physical stress/trauma during the course of Domingo's employment, it would have to weigh the evidence and become the finder of fact. That is a function for which this court is not suited and which it is not permitted to perform. See Ex parte Valdez, supra, 636 So.2d 401 (holding that in a workers' compensation case it is not proper for an appellate court to consider the weight of the evidence and make findings of fact where the trial court has failed or refused to do so).
Accordingly, we must reverse the judgment and remand the case for the trial court to make a finding of fact as to whether Domingo's alleged injury resulted from an accident occurring on October 10, 1997, or from cumulative physical trauma/stress during the course of his employment with Tyson. In making that finding, the trial court should apply the appropriate test for causation and the appropriate burden of proof.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] Domingo is a native of Guatemala and speaks very little English. The trial court used an interpreter at the trial.
[2] It appears from the record that Domingo's attorney actually provided the trial court a draft of the proposed order that was later adopted by the court. *Page 1291