YATES, Judge.
Robin W. Dills sued his employer, Wal-Mart Stores, Inc., on December 18, 1998, seeking to recover workers’ compensation benefits for injuries he sustained during the course of his employment with Wal-Mart. Following an ore tenus proceeding, the trial court entered an order on January 25, 2000, finding that Dills had suffered no permanent impairment or loss of earning capacity as a result of his injury. Dills appeals.
This case is governed by the 1992 Workers’ Compensation Act. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25 — 5—81(e)(1), Aa.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25 — 5—81 (e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought *161 to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Dills was employed by Wal-Mart as a zone-manager trainee, earning $9.10 per hour. His average weekly wage was $402.97. He was injured on March 28, 1998, when he fell approximately 25 feet from a ladder and landed on a cement floor. Dills suffered a minimally displaced calcaneus (heel bone) fracture of his right foot and a fracture and dislocation of his left talus (ankle bone).
Dr. Russell Hudgens, an orthopedic surgeon, treated Dills for his injuries. Dr. Hudgens placed Dills’s right foot in a cast and performed surgery on the left ankle to place screws in it, in order to hold the fractured bones together. Dr. Hudgens performed a second surgery on Dills’ ankle on March 22, 1999, to remove the screws. Dr. Hudgens determined that Dills had reached maximum medical improvement on April 20, 1999. He assigned Dills an impairment rating of 21% to his left foot and 15% to his left lower extremity, which equated to a 6% impairment to the body as a whole. Dr. Hudgens did not assign an impairment rating for the right foot. Dr. Hudgens also restricted Dills from lifting or carrying in excess of 25 pounds, climbing more than two flights of stairs during the workday, and standing more than 30 minutes without periods of rest.
Dr. Hudgens prescribed a brace for Dills to wear on his lower left leg. He testified that Dills would not have to wear the brace continuously, but would have to wear it for any strenuous work activity, such as walking or stair-climbing. Dills testified that the brace helps support his weight and that he wears it every day “pretty much all day,” except at night while he is at home. However, Wal-Mart introduced some videotape-surveillance evidence showing Dills not wearing the brace during the day while away from work and showing him walking without any noticeable difficulty or limp.
After his injury, Dills returned to full-time work at Wal-Mart as a “greeter.” He was subsequently transferred to “grocery receiving,” where he was responsible for checking in deliveries by various grocery vendors. At the time of the trial, Dills’s rate of pay had increased to $9.58 per hour; however, his average weekly wage had decreased to $305 because of a reduction in the number of overtime hours he was working.
The trial court made the following findings of fact:
“1. On or about March 4, 1998, Plaintiff, Robin Wayne Dills [hereinafter ‘Dills’] was employed by Defendant, Wal-Mart Stores, Inc. [hereinafter ‘Wal-Mart’], and all parties were subject to and operating under the Workers’ Compensation Act of Alabama.
“2. On or about said date, Dills sustained an injury, to-wit, a dislocation of the left talus as well as a non-displaced fracture of the calcaneus. Notice was properly given to Wal-Mart.
“3. At the time of Dills’ injury, his average weekly wage was $402.97. His temporary total disability compensation rate at the time would have been $268.64.
“4. Wal-Mart paid temporary total disability benefits for 17 weeks in the total amount of $3,255.78.
“5. The parties stipulated that temporary total disability benefits were underpaid in the amount of $1,255.28
“6. Wal-Mart has paid all medical benefits that are due to be paid in connection with the care and treatment of Dills’ injury.
“7. The Court has had an opportunity to review videotape surveillance of Dills which was made on November 8, 1999. The Court has also had the opportunity to view Mr. Dills in open court *162 and had the opportunity to observe him as he walked about in the courtroom. The Court paid special attention to the testimony of Dills with regard to his testimony concerning the need to use a particular walker boot at all times other than when he was at home and that he never went anywhere outside his home without having that walker boot on. However, throughout the video surveillance of Dills, the walker boot'is not on and it does not appear that Dills has any difficulty ambulating nor is he walking with the noticeable limp that he testified that he had following the accident.
“[8]. Dills has returned to his employment with Wal-Mart. Although the evidence would suggest that Dills is not working the number of hours at present that he was working pre-injury, there was also testimony presented by Wal-Mart, and acknowledged by Mr. Dills, that the lack of overtime work was not because of Dills’ injury but because of a policy change of Wal-Mart to reduce overtime by all of its employees.
“[9]. After thoroughly reviewing all of the evidence, including the medical records, the videotape, and viewing Dills as he walked in the Courtroom, the Court is of the opinion that Dills has no physical impairment nor loss of earning capacity as the result of his injury.
“[10]. The Court finds that although Dills did have an injury on the job which arose out of and in the course of his employment with Wal-Mart, Wal-Mart hás fully compensated Dills for this injury as required by the Alabama Workers’ Compensation Act.”
The measure of compensation for a permanent partial disability is the loss of earning capacity. City of Gadsden v. Johnson, 706 So.2d 1268 (Ala.Civ.App.1997). This court has stated:
“ ‘A trial court is not bound to accept a physician’s assigned impairment rating and is free to make its own determination as to an employee’s impairment. The impairment rating assigned by a physician is but one factor a court may consider in satisfying its duty to determine the extent of one’s disability. The trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, it must consider all the evidence, including its own observations, and it must interpret the evidence in accordance with its own best judgment.’ ”
Kiracofe v.B E & K Constr. Co., 695 So.2d 62, 65 (Ala.Civ.App.1997) (citations omitted), quoting Fuller v. BAMSI, Inc., 689 So.2d 128, 131 (Ala.Civ.App.1996). We note that the resolution of conflicting evidence is within the exclusive province of the trial court and that we must affirm the judgment of the trial court if it is supported by substantial evidence. Ex parte Trinity Indus., supra. It is the trial court that is in the best position to observe the demeanor and credibility of the employee and other witnesses in a workers’ compensation case. Ex parte Alabama Ins. Guar. Ass’n, 667 So.2d 97 (Ala.1995). Accordingly, after carefully reviewing the record, we cannot say that the trial court erred in finding that Dills had suffered no loss of earning capacity as the result of his injury.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.