YATES, Presiding Judge.
Dale Fredrick Rogers sued his employer, Marshall Durbin Food Corporation, on June 3, 1998, seeking to recover workers’ compensation benefits for an injury sustained to his back during the course of his employment with Marshall Durbin. Following an ore tenus proceeding, the trial court, on June 12, 2000, entered an order finding Rogers permanently and totally disabled and awarding benefits accordingly. Marshall Durbin appealed following the denial of its postjudgment motion.
This case is governed by the 1992 Workers’ Compensation Act. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25—5—81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before' the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
*122 Rogers was employed at Marshall Dur-bin as an “ice crusher.” Rogers’s duties included directing blocks of ice into a grate that leads to an ice-crushing mechanism. On October 27, 1997, Rogers got his foot caught in a grate; the mishap caused him to twist his back and fall to the floor, striking his back and ribs on another grate. Rogers was first treated for his back injury by Dr. W.E. Birdsong. Rogers complained of “pain in his lower back radiating out into his hips.” Dr. Birdsong diagnosed Rogers with low-back strain and prescribed bed rest and medication. Rogers returned to Dr. Birdsong on October 31, 1997, with continued complaints of pain in his lower back. Rogers informed Dr. Birdsong that he had fallen twice at home because of the problem with his back. Dr. Birdsong continued to diagnose Rogers with a low-back strain and referred him to Dr. Erich Wouters, an orthopedic surgeon, for an MRI.
Rogers was first seen by Dr. Wouters on November 3, 1997. Dr. Wouters noted, upon examination, that Rogers had para-spinal tenderness with limited lumbar motion. Rogers returned to Dr. Wouters on November 6, 1997, with continued complaints of back pain radiating into his hips and into his groin. Dr. Wouters ordered an MRI, which revealed a significant disc herniation at the left L4-5 level. Dr. Wouters referred Rogers to Dr. Carter Harsh, a neurosurgeon, for further evaluation and possible surgical intervention.
Rogers was first seen by Dr. Harsh on November 13, 1997. Dr. Harsh’s physical examination of Rogers indicated that he had lumbar tenderness with diminished pinprick sensitivity in his left foot. Dr. Harsh noted that Rogers’s symptoms were greater in his left leg than in his right leg. After reviewing the previous MRI, Dr. Harsh concluded that Rogers had a ruptured disc at the central left L4-5 level and recommended surgery. Dr. Harsh performed surgery on Rogers on December 12, 1997, in order to repair the ruptured disc.
Rogers initially improved following surgery; however, he returned to Dr. Harsh on January 15, 1998, with significant and worsening complaints of pain in the low back radiating into the left hip and leg. A second MRI revealed a recurrent disc rupture at the left L4-5 level. Dr. Harsh performed a second surgery on Rogers on March 3,1998, to repair the recurrent disc rupture.
Rogers returned to Dr. Harsh following the second surgery, and Dr. Harsh noted that although Rogers still had some back and leg symptoms he was showing overall improvement. Dr. Harsh prescribed some medication and a home exercise activity for Rogers. On April 13, 1998, Dr. Harsh released Rogers to return to light-duty work with restrictions that he lift no more than 15 pounds, alternate between sitting and standing every 30 minutes, and avoid low-back extension and flexion. However, Rogers did not return to work at that time.
Rogers returned to Dr. Harsh on April 23, 1998, and told him that he had been doing well until he “tripped on a rock and fell sideways” while walking. Rogers complained of acute recurrent pain in his lower back that radiated into his left leg. Dr. Harsh continued Rogers on some medication and the home exercise program. Rogers returned to Dr. Harsh on May 21, 1998, and informed him that he had been incarcerated in the local jail for fighting with his wife. Rogers related to Dr. Harsh that while incarcerated he was required to lift a mattress weighing approximately 15 pounds and that he had experienced a worsening of Ms low-back and left-leg pain since that time. Dr. Harsh con- *123 timed Rogers on the medication and home exercise program.
Rogers returned to Dr. Harsh on June 11, 1998, stating that his pain had improved, although it was not totally resolved, and requested that he be released to return to work at full duty. Dr. Harsh determined that Rogers had reached maximum medical improvement at that time and released him to return to work at full duty. Dr. Harsh assigned Rogers a 7% impairment rating as to the first surgery and a 6% impairment rating as to the second surgery.
Rogers returned to his job as an ice crusher, but was unable to perform the duties of that job; he was transferred to a job in the “further processing area.” This job required Rogers to wipe down “drip pans,” which were located overhead, with a mop. Rogers was unable to perform this job because of the overhead stretching involved. Rogers was next transferred to a job in the “lug room.” This job required Rogers to load “lugs,”[1] which weighed approximately five pounds, into a washer to be washed and then to stack them after they had been washed.
Lloyd Boshell, the superintendent over shipping at Marshall Durbin, testified that he had observed Rogers working in the “lug room” without apparent difficulty. He also stated that Rogers had never complained to him that he was unable to perform the job duties in the “lug room.” However, Rogers testified that he was unable to perform this job because on this job he was required to pull the “floor jack,” on which the pallets containing the “lugs” were placed, and that he had informed Boshell of this fact.
Rogers did not return to work at Marshall Durbin after June 26, 1998. Rogers stated that he was unable to get out of bed because of his back problem and that he telephoned to notify the company nurse that he was trying to get an appointment to see Dr. Harsh. Jay Warren, the personnel manager at Marshall Durbin, testified that for three consecutive days Rogers failed to appear at work and failed to call in to report the absence, and that Roger was therefore terminated from his employment at Marshall Durbin on July 2, 1998.
Rogers had returned to Dr. Harsh on June 16, 1998, complaining that he had experienced progressive lower-back pain, left-leg pain, and some right-leg pain approximately one week after returning to work. Following his termination from Marshall Durbin, Rogers returned to Dr. Harsh, on August 10, 1998, and reported that he had improved to the point that he was having only some mild low-back pain, until, approximately one week earlier, his “legs gave away” while he was carrying some groceries; he said his legs “giving away” had caused him to fall. Rogers informed Dr. Harsh that this incident had caused him to experience severe low-back pain that radiated into the left thigh and bilaterally across the groin area, numbness and tingling down both legs into the toes, and urinary incontinence. Dr. Harsh ordered an MRI, which was negative for a recurrent ruptured disc.
Dr. Harsh testified that he did not believe the symptoms complained of on August 10, 1998, were work related because these symptoms had resulted from an independent event. He also stated that Rogers’s work-related injury that he had previously treated was limited to the lower back and left leg, whereas the new symptoms complained of involved both legs and loss of bladder control.
Rogers returned to Dr. Harsh on August 24,1998, with continued complaints of *124 pain. Dr. Harsh noted that Rogers’s urinary incontinence had resolved. Dr. Harsh scheduled Rogers for a functional capacities evaluation (“FCE”), which was completed on September 17, 1998. The FCE indicated that Rogers should be placed at a medium work level with a 45-pound lifting limit.
Rogers was next seen by Dr. Harsh on October 22, 1998. Rogers indicated at that time that his symptoms of pain had increased, with a “stabbing” pain in his lower-right back, hip, and right groin area. Dr. Harsh testified that these symptoms were not work related. Rogers returned to Dr. Harsh on February 15, 1999, with continued complaints of back pain, pain in both hips, and testicular pain. Dr. Harsh stated that these complaints were not work related.
Relying upon Ex parte Pike County Comm’n, 740 So.2d 1080 (Ala.1999), Marshall Durbin contended in the trial court that any symptoms and complaints of pain Rogers had following the second surgery were not the natural result of his on-the-job accident, but, rather, were caused by an intervening event, and, therefore, were not compensable. Our supreme court has stated:
“When determining whether a successive injury is compensable, the general rule is that ‘[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant’s own intentional conduct.’ [1 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law, § 13.00 (1998)].... Thus, ‘subsequent injury, whether an aggravation of an original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.’ 1 Larson, supra, § 13.11.”
Pike County Comm’n, 740 So.2d at 1084.
The trial court’s order makes no finding as to whether Rogers’s symptoms and complaints of pain that followed his second surgery were the natural and direct result of his earlier compensable injury and, therefore, compensable; or whether they are attributable to an independent intervening cause and, therefore, not com-pensable. It is also unclear from the court’s order whether the court considered the subsequent symptoms and complaints of pain in determining that Rogers was 100% permanently and totally disabled. In a workers’ compensation case the trial court is required to make a finding of fact and a conclusion of law as to each and every issue presented to, and litigated in, the trial court; where this is not done, the judgment is to be reversed. Tyson Foods, Inc. v. Domingo, 764 So.2d 1287 (Ala.Civ.App.2000). In order for this court to make a finding as to whether the subsequent complaints and symptoms are compensa-ble, it would have to weigh the evidence and become the finder of fact. “That is a function for which this court is not suited and which it is not permitted to perform.” Id., at 1290.
Accordingly, justice requires that the judgment be reversed and the case remanded for the trial court to make a finding as to whether the complaints and symptoms that Rogers complained of following his second surgery were compensable. See Ex parte Russell Corp., 725 So.2d 264 (Ala.1998).
Marshall Durbin next argues that the trial court erred in considering evidence of Rogers’s vocational disability in reaching its determination that he is 100% permanently and totally disabled. Because this issue is certain to arise on re *125 mand, we will address it here. Dr. William A. Crunk, Jr., a vocational expert, testified that Rogers was 100% vocationally disabled. The trial court relied upon this testimony in reaching its determination as to disability.
Section 25-5-57(a)(3)i., Ala.Code 1975, provides:
“i. Return to Work. If, on or after the date of maximum medical improvement, except for scheduled injuries as provided in Section 25—5—57(a)(3), an injured worker returns to work at a wage equal to or greater than the worker’s pre-injury wage, the worker’s permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability.”
We conclude that the trial court did not err in considering the testimony of Dr. Crunk regarding Rogers’s vocational disability. The return-to-work provision is applicable only where the trial court finds the employee to be permanently partially disabled, and it does not apply when the court finds the employee to be permanently and totally disabled. Keen v. Showell Farms, Inc., 668 So.2d 783 (Ala.Civ.App.1995). Here, the court found Rogers to be permanently and totally disabled; therefore, the return-to-work provision is not applicable.
We also note that although Rogers returned to work, evidence in the record suggests that he was unable to perform any of the jobs Marshall Durbin had available. Rogers attempted the ice-crusher job, but was unable to perform the duties of that job, so he was transferred to the “further processing area.” Rogers was unable to perform the duties of the job in the “further processing area,” so he was transferred to the “lug room.” The testimony is disputed as to whether Rogers could perform the job in the “lug room.” Boshell testified that he observed Rogers working in the “lug room” without difficulty. Boshell also stated that Rogers never told him that he was unable to perform the job in the “lug room.” Rogers, on the other hand, testified that he was unable to perform the job in the “lug room” because he was unable to pull the floor jack, and he testified that he informed Boshell of this fact. Rogers testified that he did not return to work because he was unable to get out of bed, because of back pain, and that he telephoned the company nurse to inform her of this fact. Warren testified that Rogers failed to call in and report his absence and that for that failure he was terminated. The court could have concluded from this testimony that Rogers was unable to return to work at a wage greater than, or equal to, his pre-injury wage, and, therefore, that § 25—5—57(a)(3)i. was inapplicable to the facts of this case.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY and MURDOCK, JJ., concur.
THOMPSON and PITTMAN, JJ., concur in the result.

. A “lug” is a crate that is used to carry chicken parts.