YATES, Presiding Judge.
Susan Tucker sued her employer, Marshall Medical Center South (“the Medical Center”), on May 14, 1999, seeking to recover workers’ compensation benefits for injuries she sustained to her back during the course of her employment with the Medical Center. Tucker amended her complaint to allege that she suffers from severe.depression as the result of her back injury. Following an ore tenus proceeding, the trial court on June 25, 2001, en *1264 tered the following order, which reads, in part:
“2. Tucker received a back injury on December 3,1997. She was acting within the line and scope of her employment by [the Medical Center] at the time of the accident. [The Medical Center] received timely notice of the accident.
“8. Tucker’s average weekly wages were in the amount of $191.59. Thus, her compensation rate was in the amount of $127.73.
“4. [The Medical Center] has paid Tucker her temporary total compensation benefits for three weeks and six days during the time that she was off work before she reached maximum medical improvement.
“5. Tucker received fringe benefits in the amount of $11.75 each week from [the Medical Center]; those benefits were continued through her last day of work on December 31,1998.
“6. [The Medical Center] has paid the medical expenses for Tucker in the amount of $14,708. It has denied payment for treatment by Dr. James White (as well as related surgery by him), contending that the treatment was not authorized.
“7. Tucker is 40 years old. She quit school in the ninth grade but later received her GED certificate around 1991. She received certification as a nursing assistant around 1992.
“8. Tucker has worked at various times as a nursing assistant, restaurant waitress, and daycare worker. She was employed by Katy’s Katfish [restaurant] from June 1993 to September 1995. She then worked at Wal-Mart around the Christmas holidays in 1995.
“Tucker then worked at Presbyterian Daycare in Texas from approximately January 1996 to November 1996. She was off work until she began working for Western Sizzlin’ [restaurant] from April 1997 to August 1997.
“9. Tucker was employed by [the Medical Center] on September 13, 1997, approximately 2 1/2 months before this work-related injury. She worked continuously (except for approximately three weeks when she received temporary total compensation benefits) until she last worked on December 31,1998.
“10. Tucker had a prior back injury in 1991 while playing with her nephew who dropped her. She had a herniated disc at L5-S1 as a result of that accident. Surgery was performed by Dr. James White in 1992 for the back injury. Tucker has experienced occasional backaches since the surgery.
“11. Tucker was initially treated at Occupational Health [Services] for this December 3, 1997, accident. She was prescribed medication and released to return to work on December 6, 1997.
“Next, Tucker saw Dr. Clayton Davies from January 1998 to February 1998. He is a neurosurgeon in Birmingham. Dr. Davies reviewed a lumbar MRI which was taken in December 1997; it showed a disc bulge at L5-S1 (which was the same level as Tucker’s prior back surgery).
“In Dr. Davies’s opinion, Tucker did not have any permanent impairment as a result of her work-related accident. He did not impose any restrictions. Tucker was displeased with the treatment by Dr. Davies because of the manner in which he told her that he could find nothing wrong with her.
“12. Next, Tucker selected Dr. Perry Savage from a panel of four physicians. He is an orthopedic surgeon in Birmingham.
“Dr. Savage noted that the lumbar myleogram and lumbar CT scan showed *1265 degenerative changes. A lumbar MRI showed degeneration; however, a subsequent discogram in January 1999 showed an abnormal disc at L5-S1.
“Dr. Savage was of the opinion that Tucker reached maximum medical improvement on June 15, 1998, as a result of the work-related accident; however, she continues to have pain due to the pre-existing arthritis and degeneration. He assigned a 0% physical impairment rating and released Tucker to return to work.
“Dr. Savage agreed that Tucker needed a lumbar spine fusion. Approximately 90 to 95% of the reason for that surgery was because of Tucker’s prior degeneration and surgical changes while the remaining 5 to 10% was because of the irritation from this work-related accident.
“18. Finally, Tucker returned on her own to Dr. James White who performed the prior lumbar surgery in 1992. Dr. White noted that Tucker had a degenerated disc at L5 which had collapsed. He performed surgery for decompressive lumbar laminectomy at that level.
“14. The court finds Tucker has suffered an 80% permanent disability and reduction in ability to work as a result of the December 3,1997, accident.
[[Image here]]
“It is therefore ORDERED by the court as follows:
“A. Tucker’s average weekly wages were in the amount of $191.59, and, therefore, her compensation rate is in the amount of $127.73. Tucker has been paid for temporary total compensation benefits for three weeks and six days which shall be credited against the permanent partial compensation award.
“B. Tucker shall receive a weekly compensation benefit in the amount of $102.35 (80% x AWW x .6667). [The Medical Center] owes compensation benefits for an additional period of 296 weeks, of which 104 weeks have accrued since Tucker reached maximum medical improvement based upon Dr. Perry Savages’s deposition testimony. The remaining 192 weeks are due to be commuted to 172.194 weeks. Thus, Tucker is entitled to permanent partial compensation benefits for 276.194 weeks.,
“C. A judgment is hereby entered in favor of Tucker and against [the Medical Center] in the amount of $28,268.46 (weekly benefit x 276.194 weeks) for her permanent partial disability and reduction in ability to earn. “D. Tucker is entitled to any future medical expenses which are reasonable, necessary, authorized, and related to her back injury. The court orders [the Medical Center] to reim- , burse Tucker for the co-payments and deductibles which she paid to her health insurer; however, the court defers ruling on whether Tucker’s health insurer is entitled to any rights of subrogation or reimbursement from [the Medical Center].”
Tucker filed a postjudgment motion, which was denied. She appeals,
Tucker argues, among other things, that the trial court’s judgment is due to be reversed and the case remanded because the trial court failed to make a determination on several issues. We agree. The court determined that Tucker suffered a work-related injury to her back on December 3, 1997, during the course of her employment with the Medical Center. She initially received treatment from Occupational Health Services, and was then referred to Dr. Clayton Davies, a neurosurgeon, for treatment. Dr. Davies ordered a lumbar myleogram, an EMG, and a nerve *1266 conduction study, which he noted were normal and did not reveal a herniated disc. Dr. Davies returned Tucker to work on February 5,1998.
Tucker requested to see a new physician and she was provided a panel of four physicians from which to choose. She chose Dr. Perry L. Savage, an orthopedic surgeon. Dr. Savage first treated Tucker in February 1998. Dr. Savage initially treated Tucker conservatively with a series of steroid injections and exercises, and he restricted her to light-duty work. On August 12, 1998, Dr. Savage noted that the pain Tucker was experiencing at that point was related to a pre-existing back injury and surgery. The Medical Center denied Tucker’s workers’ compensation claim based on the August 12, 1998, assessment by Dr. Savage.
Tucker continued to be treated by Dr. Savage and she reported on January 8, 1999, that her pain had increased. Dr. Savage performed some tests and then recommended surgery. Tucker requested authorization for the surgery recommended by Dr. Savage, contending that the prior back injury and surgery she had experienced in 1992 did not prevent her from performing the duties required by her employment with the Medical Center, and, therefore, that her prior injury was not considered preexisting under the Workers’ Compensation Act. The Medical Center refused to authorize the surgery.
In October 1999, Dr. Savage testified in his deposition that the workplace accident of December 3, 1997, contributed to Tucker’s symptoms and to the need for surgery. Following Dr. Savage’s deposition, Tucker again requested that the Medical Center provide her with medical treatment. The Medical Center continued to refuse to provide Tucker with medical treatment. Tucker, on her own initiative, ultimately sought treatment in February 2000 from Dr. James G. White III, the physician who had treated her for the previous back injury in 1992. Dr. White noted that at that time Tucker was complaining of lower back pain and that she was depressed. Dr. White ordered an MRI, which revealed a collapsed degenerated L5 disc. In March 2000, Dr. White performed surgery in order to repair the disc. He testified that Tucker’s injury was caused by the December 3, 1997, accident, and, further, that the injury had caused Tucker pain that has contributed to her depression. Dr. White referred Tucker to Dr. Paul Muratta for pain management.
Before the trial court were, among other things, issues regarding the authorization of Tucker’s medical treatment by Dr. White and Dr. Muratta and the payment of her related medical expenses; whether Tucker was entitled to additional temporary total disability benefits; and whether Tucker’s alleged depression was compensable under the Act. The trial court, in its order, deferred ruling on the issue regarding the authorization of her medical treatment by Dr. White and Dr. Muratta. The trial court did not address whether Tucker was entitled to additional temporary total disability benefits and whether her alleged depression was com-pensable under the Act. The trial court in a workers’ compensation case “ ‘is required to make findings of fact and conclusions of law, and these findings should encompass each and every issue presented to and litigated in the trial court; where this is not done, the judgment should be reversed.’ ” Ex parte Valdez, 636 So.2d 401, 404 (Ala.1994), quoting Thompson & Co. Contractors v. Cole, 391 So.2d 1042, 1046 (Ala.Civ.App.1980). If this court were to make a determination as to the issues in this case, it would be weighing the evidence and would become the finder of fact. That is a function for which this *1267 court is ill suited and one which it is not permitted to perform. Tyson Foods, Inc. v. Domingo, 764 So.2d 1287 (Ala.Civ.App.2000).
Accordingly, we must reverse the judgment and remand the case for the trial court to make findings of fact and conclusions of law as to whether the treatment by Dr. White and Dr. Muratta and the related medical expenses should have been authorized; whether Tucker is entitled to additional temporary total disability benefits; and whether Tucker’s alleged depression is compensable. Because the trial court’s finding relating to the extent of Tucker’s disability may change upon remand, we pretermit discussion of that issue at this time.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
THOMPSON, J., concurs in the result.