318 So.2d 729

**CITY OF TUSCALOOSA**

**v.**

**Morris D. HOWARD.**

**Civ. 507.**

Court of Civil Appeals of Alabama.

Aug. 27, 1975.

J. Wagner Finnell and Glenn N. Baxter, Tuscaloosa, for appellant.

Zeanah, Donald, Lee & Williams, Tuscaloosa, for appellee.

WRIGHT, Presiding Judge.

This is a workmen's compensation case.

Plaintiff had been employed as a fireman by the City of Tuscaloosa for nearly 20 years when on December 8, 1972, he suffered a heart attack. While on duty as a Lieutenant in the Fire Department on November 28, 1972, and performing routine duties of housekeeping, plaintiff felt chest pains which radiated into his left arm. He informed his co-workers of his pain. He rested for a while and remained on the job until his shift was over at 6:30 A.M. on November 29. After finishing his shift he reported to his second job with the Credit Bureau as a collector. He worked Monday, the 29th, though he felt some pain. He also worked as a collector on November 30. After going home from work on November 30, he again felt pain and reported to his physician by phone. He was instructed to report to the emergency room of the hospital. After tests and electrocardiogram he was placed in an intensive care unit. He remained in that unit for two days and was moved to regular care room. On December 5, he again suffered pain and was returned to intensive care. At that time it was determined that he had suffered a heart attack or a myocardial infarction. Plaintiff remained hospitalized until December 22, 1972, and was not permitted to return to his duties until March 15, 1973.

On May 29, 1973, he filed for compensation under the Workmen's Compensation Act. Trial was had on May 15, 1974. Judgment granting compensation was entered by the court on December 23, 1974.

Plaintiff presented his claim under three alternative theories. The court found compensation due under each theory. Defendant charges error in each finding.

The first theory was that plaintiff was subject to the Workmen's Compensation Act as an employee of the City of Tuscaloosa and that he had suffered an accident resulting in bodily injury, a heart attack, while engaged in the line and scope of his employment.

The second theory was that plaintiff was entitled to compensation under the general occupational disease provisions of Title 26, Article 2C, i. e., that plaintiff's injury resulted from heart disease arising out of his employment as a fireman.

The third theory was that he became disabled as a fireman due to heart disease under Title 37, Section 450(4) of the Code (known as The Fireman's Heart and Lung Disability Act passed by Legislature in 1967,) and was entitled to workmen's compensation by the provisions of that act.

Our review of the judgment in workmen's compensation cases is limited to determining if there is any legal evidence to support the finding of fact by the trial court and if the correct law was applied to such facts. *Reynolds Metals Company v. Gray,* 278 Ala. 309, 178 So.2d 87, and cases cited therein. With such rule in mind we will examine the findings and judgment of the court as to each of the theories of recovery. If one of them is sufficient in fact and law the judgment may not be disturbed.

Defendant assigns as error the finding of the trial court that plaintiff sustained an injury by accident arising out of and in the course of his employment.

Sec. 262 of the Act defines "accident" as "an unexpected or unforeseen event, happening suddenly and violently, . . . producing at the time injury to the physical structure of the body by accidental means." The cases applying this definition are legion in this state and others. Many law review articles and treatises have been written concerning its meaning and application. Its application has been particularly difficult in heart attack cases. The results of its application have been varied and often difficult to distinguish on the facts presented. For many years the appellate courts of this state held that "accident" related to the event causing the injury rather than the result, and that such event must happen suddenly and violently, be of an unusual nature and foreign to the usual occurrences on the job. An example of such interpretation is the case of *Gentry v. Swann Chemical Co.,* 234 Ala. 313, 174 So. 530. Beginning with the case of *Gulf States Steel Co. v. Christison,* 228 Ala. 622, 154 So. 565, and finding full expression in the case of *Pow v. Southern Const. Co.,* 235 Ala. 580, 180 So. 288, our courts came to the conclusion that if the job caused the injury it was an accident under the intent of the Act. The requirement that there must be shown a violent and unusual event which causes the injury was replaced by the principle that there was an accident if the result was unexpected and unforeseen and it was caused by the job. We have arrived at the point of determining if the job caused the injury or death. *Southern Cotton Oil Co. v. Wynn,* 266 Ala. 327, 96 So.2d 159; *Reynolds Metals Co. v. Gray, supra; B. F. Goodrich Co. v. Martin,* 47 Ala.App. 244, 253 So.2d 37.

As pointed out by Larson in his treatise, *Workmen's Compensation Law,* Vol. 1A, Sec. 38.83, the essence of the problem, particularly in heart attack cases is causation. How is it to be determined that the job caused the heart attack? It is certainly not enough to show that plaintiff, a fireman, had a heart attack, especially if, as in this case, the attack did not occur on the job but some 11 days later.

Larson points out that causation has two distinct parts: the legal and the medical. He says:

"The law must define what kind of exertion satisfies the test of 'arising out of the employment'; then the doctors must say whether the exertion which has been held legally sufficient to support compensation has in fact caused the heart attack."

How to define the legal test of cause of injury arising from an act of employment? It surely cannot be limited to some unusual strain or exertion not ordinary to the job. Of course, in case of occurrence of an unusual exertion or happening, the determination of legal causation is generally made easier. It appears that the proper test was set out in *Pow v. Southern Construction Co., supra,* which we paraphrase as follows: If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the statute. Such can be the legal test of causation. However, the medical test of cau-

sation must also be met—that is, that such exposure, though operating with or upon other exposure common to all, was in fact, the contributing cause of the injury. This test meets the employment versus non-employment exertion test of Larson stated in 65 Mich.L.Rev. 441.

Applying this test to the facts of the instant case, we are unable to find legal evidence to support either the legal test or the medical test of causation.

There is no evidence that when plaintiff first began to suffer pain in his chest and arm on November 28, that he was undergoing or had recently undergone strain or exertion of such a nature as could be classified so different from others not employed as firemen as to be an accident. For more than 24 hours prior to the onset of pain there had been no fire alarm; there was no evidence of physical or emotional strain. He had been on duty but only doing routine maintenance and housekeeping chores. There was no evidence that he had not eaten and slept at normal times. In fact, there was no evidence of any particular strain or exertion on his job for the prior month. He had worked his job as a fireman and a second job of bill collecting in his off-duty hours. There was no evidence of strenuous activity, exposure to danger or risk different from others not employed as firemen. Though it was said in *Reynolds v. Gray, supra,* quoting from *Pow, supra* that it is not necessary to show unusual strain or overexertion it is necessary to show that the strain and exertion of his work caused the injury. In *Reynolds, supra,* it was shown that the job entailed lifting several heavy pieces of metal in a short time while exposed to temperatures of 1350 degrees Fahrenheit. It is clear that *Reynolds* stands for the proposition that the evidence must show that the employee was involved in, or exposed to some sort of activity prior to or at the time of the attack or the onset of it which could satisfy the legal test of accidental causation. No such evidence is shown by the evidence of this case.

We go further and state that we find no legal evidence to support the medical test of causation. There is no testimony that any activity of plaintiff at or prior to the onset of pain in any way caused such pain or his subsequent heart attack.

■ We must therefore hold that plaintiff suffered no accident within the definition of the Workmen's Compensation Act. To do otherwise, under the evidence, would be to hold that any fireman suffering a heart attack would be entitled to workmen's compensation and his employer an insurer against heart attacks.

Plaintiff's second alternative for recovery was that his heart attack resulted from an occupational disease under Title 26, Chapter 5, Article 2C. This is the first action to establish a heart attack as an occupational disease to reach an appellate court since Article 2C was enacted by the legislature in 1971. It is therefore necessary to give the provisions of the Article close attention.

■ One effect of the occupational disease act is to remove the strict requirement of proof that the injury occurred by accident:

"Where the employer and employee are subject to the provisions of Chapter 5, Title 26, Code of Alabama 1940, as amended, the disablement or death of an employee caused by the contraction of an occupational disease as hereinafter defined, shall be treated as an injury by accident, and the employee or, in case of his death, his dependents shall be entitled to compensation as provided herein. . . ." Title 26, Sec. 313(33), Code.

■ Proof of the contraction of an occupational disease does not remove the burden of proving that the contraction of the disease arose out of and in the course of employment and resulted from the nature of the employment.

". . . [I]n no case, however, shall an employer be liable for compensation

by reason of the contraction of an occupational disease, as defined herein, or for disability or death resulting therefrom, unless such disease arose out of and in the course of the employment and resulted from the nature of the employment in which the employee was engaged." Title 26, Sec. 313(33), Code.

Sec. 313(34) defines "occupational disease" as follows: ". . . [A] disease (including but not limited to loss of hearing due to noise) shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of exposure over a period of time to the normal working conditions of such trade, process, occupation or employment. The term 'contraction of an occupational disease' as used herein shall include any aggravation of such disease without regard to the employment in which the disease was contracted. . . ."

■ Sec. 313(45) of Article 2C provides as follows:

"There shall be no presumption that disablement or death from any cause or infirmity is the result of an occupational disease nor that an occupational disease will result in disablement or death, and any person claiming compensation or other benefits under this article shall have the burden of establishing that he is entitled to such."

We conclude that Article 2C requires that there be evidence that plaintiff has a disease which may be directly caused by or result from exposure over a period of time to a hazard recognized as peculiar to the normal working conditions of his particular occupation. There must be further evidence that plaintiff's disease was in fact contracted from the nature of his employment or was aggravated thereby, and that the contraction or aggravation arose out of and in the course of his employment. It then must be shown that the disability claimed resulted from the disease.

With these conclusions in mind, we have examined the evidence. Our examinatin discloses that plaintiff was employed as a fireman in 1953. He was examined by a physician after suffering chest pains in 1961. His cholesterol was found to be elevated and he was placed. on a diet and exercises. In 1966, plaintiff suffered a slight stroke which was brought about by hardening of vessels in the brain. His cholesterol was again determined to be high. He was given medication to lower cholesterol, thin his blood and dialate his arteries. He continued on exercise. From such history, it is evident that from the age of 27 or 28 in 1961, plaintiff has had arteriosclerosis or hardening of the arteries. The medical evidence is that plaintiff's injury was a myocardial infarction resulting from progressive onset of arteriosclerotic heart disease. There is no medical testimony that arteriosclerosis is a hazard of employment as a fireman and is peculiar to that occupation as opposed to others, or that such disease "resulted from the nature of such employment."

■ The only testimony that the occupation of fireman tended to cause heart attacks came from plaintiff himself and a fellow fireman. This evidence was objected to as improper. For a reason not clear, the trial judge repeatedly reserved a ruling on the objections and received the answers. No ruling ever appears in the record. Though the case was filed prior to the adoption of the Alabama Rules of Civil Procedure, such rules were in effect at the time of trial and for some time prior thereto. All pleadings were of the pre-Rule kind, including the announcement by the court that defendant pleaded the general issue in short by consent. Thus the trial proceeded under the old rules as permitted by Rule 86. We conclude that the learned trial judge rendered judgment after considering only legal evidence. The opinion of plaintiff and his fellow employee that the occupation of fireman caused heart attacks was patently inadmissible as expert testimony, and we do not consider such evi-

**708**

dence on this review. Establishment of a precedent that heart attacks or heart disease is an occupational disease under the Workmen's Compensation Act may not be permitted upon illegal evidence. If and when such decision is made, it must be upon legal evidence proving the requirements of the statute.

■ We hold that the legal evidence does not support the finding of the court that plaintiff contracted an occupational disease arising out of the line and scope of his employment and that such disease resulted in his injury.

Plaintiff's third theory of recovery is that Title 37, Section 450(4) (Fireman's Heart and Lung Act) must be read in pari materia with the Workmen's Compensation Act and if plaintiff is qualified for benefits under that act, his compensation shall be the same as Workmen's Compensation. We do not agree with plaintiff's theory.

Plaintiff's theory arises from the wording of paragraph (4) of Section 450(4) which states:

"If a fire fighter who qualifies for benefits under the provisions of this section suffers disability as a result of a fire fighter's occupational disease his disability shall be compensable the same as any service connected disability under any law which provides benefits for fire fighters of such city injured in the line of duty . . ." (Emphasis ours.)

Plaintiff submits that the phrase "under any law" may be referred to the Workmen's Compensation Law. We do not so interpret the phrase.

■ Without lengthy comment as to the provisions of the Fireman's Heart and Lung Act, it is clearly evident that the purpose of the Act is to compensate a fireman who has served for three years for a disability due to heart disease. It casts no burden of proof upon him to show that such disease resulted from his occupation

or that it occurred in the line and scope of his employment. The mere fact that he has hypertension, heart disease or respiratory disease and is disabled to perform duties as a fire fighter qualifies him for "benefits."

We have emphasized the word "benefits" for it is the term which refutes plaintiff's theory. The Act defines "benefits" as "any monetary allowance payable by a city, or from a pension system established for the firemen of a city, to a fire fighter on account of his disability, or to his dependants on account of his death, irrespective of whether the same is payable under a pension law of the state or some other law of the state."

It is evident that the "benefits" payable are to come from any monetary allowance or from a pension system established for firemen and such "benefits" are to be paid "irrespective of whether benefits may be payable also from a pension law of the state or some other law of the state." In other words, if a fire fighter develops heart disease under the conditions of the Act, and is disabled or dies therefrom, the city has to pay whatever benefits it allows or provides under its pension system for disability or death, though other benefits may also be payable under a state pension or other law of the state. For example, death benefits under Title 55, Chapter 11A of the *Code.*

Paragraph (4) heretofore quoted and upon which plaintiff relies also uses the term "benefits." It says that if a fire fighter who qualifies for "benefits" as defined in the section suffers disability as a result of a heart disease, he shall be compensated therefor as he would be for any other service-connected disability "under any law" which provides benefits for fire fighters injured in the line of duty.

■ There is no question but that paragraph (4) does not refer to any *amount* of compensation provided "under

any other law," but refers to *qualification* for compensation. If he is disabled by heart disease he is entitled to "benefits" provided by the city through a monetary allowance or through a pension system in the same manner as he is for any other service-connected disability under any law other than the Fireman's Heart and Lung Act. The obvious intent of the Act is to insure that disability from heart disease is recognized as a disability incurred in the line of duty, and shall be recognized as such under any law which provides benefits for fire fighters of the city injured in the line of duty.

 It is to be further noted that the Fireman's Heart and Lung Act predates the occupational disease provisions of Title 26, Article 2C by three years. If the legislature intended that such act be applied to the Workmen's Compensation Act, it could have so stated and incorporated it. The case of *Schwartz v. City of Duluth,* 264 Minn. 514, 119 N.W.2d 822, cited by plaintiff indicates that the State of Minnesota has included certain heart disease as an occupational disease of firemen and policemen in its Workmen's Compensation Law. Minn.St. 176.011(15). The legislature of this state has not done so. A similar act, Act 1213 (1971) enacted for the benefit of policemen and State Troopers specifically excludes the application of its provisions to any city which has elected to be covered by the Workmen's Compensation Law. Title 55, Section 378(12) of the *Code.*

We call attention of plaintiff to the exclusive remedy provisions of the Workmen's Compensation Law, including the specific provisions of Article 2C at Section 313(37) which declares if the employer and employee are subject to the Article no other method, right, form or amount of compensation or damages for contraction of an occupational disease is available.

We have not discussed defendant's argument on appeal that plaintiff failed to show that the city was subject to Article 2C by filing its acceptance thereof as provided by Title 26, Section 263. The cited case of *Ellison v. Butler,* 271 Ala. 399, 124 So.2d 88 lends support to defendant's argument. However, in view of our reversal on other bases we pretermit discussion of that assignment of error. Having determined the court erred in rendering judgment for plaintiff, the judgment must be reversed and the case remanded.

Reversed and remanded.

BRADLEY and HOLMES, JJ., concur.