THIGPEN, Judge.
This is a workmen’s compensation case.
In November 1989, the widow and children (collectively, Valdez) of Steven S. Valdez (the decedent), filed a complaint against Pen Gulf, Inc. (Pen), alleging that the decedent had contracted lung cancer while employed by Pen. The record reveals that the decedent was employed as a painter by Pen from May 1986, until January 1988, and that the decedent subsequently worked for Diversified Rail. In approximately May 1988, the decedent was diagnosed with lung cancer and died as a result thereof that December.
In the complaint, Valdez claimed that the decedent’s lung cancer was caused by a hazard recognized as peculiar to that particular trade, and as a direct result of exposure over a period of time to the normal working conditions of the decedent’s trade as a painter. Valdez claimed, as dependents of the decedent, that they were entitled to workmen’s compensation from Pen.
Pen answered and affirmatively defended on the basis that the decedent had given them no notification of any injury and that the claim was barred by the statute of limitations. On motion, the trial court limited the evidence to claims of liability and the defenses thereto.
Before the final hearing in February 1992, the parties stipulated that the issues to be resolved were:
“whether or not [the decedent] was in fact exposed to any hazard (i.e. coal-tar epoxy) in excess of those ordinarily incident to employment in general and if so, whether there was a sufficient medical nexus between any alleged exposure and [the decedent’s] death from cancer.”
Valdez argued that the decedent’s exposure to coal-tar epoxy, while employed by Pen, was the hazard that resulted in his death. Conflicting evidence presented during trial reflected that the decedent’s potential exposure to coal-tar epoxy was between four days and three weeks of his total period of employment with Pen.
The decedent’s treating physician, Dr. Perlman, testified that the decedent’s history revealed several risk factors that may have precipitated or been involved in his cancer, including exposure to asbestos, smoking, and spraying paint.
The trial court ruled that the decedent was not exposed to any hazard in excess of those found in employment in general. It further found that the decedent did not sustain any occupational disease which directly or proximately resulted in his death because of his employment with Pen.
Valdez’s motion for additional findings of fact and motion to alter, amend or vacate were denied by the trial court. Valdez appeals.
On appeal, Valdez argues that the trial court erred in failing to make a finding of fact regarding whether there was evidence of coal-tar exposure; that the trial court erred as a matter or law in finding that Pen was not responsible for the decedent’s death because the hazard did not directly or proximately cause his death; that the trial court’s ruling requires Valdez to prove that the decedent suffered from excessive exposure, the extent of exposure, and that the exposure caused his injury or death and that the court’s ruling violates the equal protection clause of the United States Constitution and the Alabama Constitution inasmuch as Ala. Code 1975, § 25-5-116, limits the rights of the employee or his dependents to a claim against the last employer in whose employment the employee was last exposed to the hazards of such disease and it prohibits contribution from any other employer.
At the conclusion of the ore tenus proceeding, the trial court entered the following findings of fact:
“3. For a period of 4 days throughout the course of Employee’s employment with Defendant, coal-tar epoxies were being applied to certain structures at a job site where Employer was engaged in the business of industrial coating. Evidence was in conflict about the alleged exposure to coal-tar *400 epoxies and the Court, without making a determination of that issue concludes that even if Plaintiffs evidence was believable as to that issue, that evidence failed to reasonably satisfy the Court that such exposure was a direct cause of Employee’s terminal illness. Coal-tar epoxy is the only ‘hazard’ to which Employee was claimed to have been exposed with Employer.
“4. Employee was a painter by trade with a history of asbestos exposure, marihuana smoking, cigarette smoking and paint spraying. Dr. Martin Perl-man, an Oncologist and Employee’s treating physician, testified that asbestos exposure and cigarette smoking alone could account for Employee’s cancer and death.”
In the conclusions of law, the trial court specifically concluded:
“... that Defendant is not responsible for the death of Employee inasmuch as the claimed hazard of Employee’s employment with this Defendant did not directly or proximately cause his death and further, that Employee’s disease and death were not the direct result of exposure over a period of time to the normal working conditions of his employment as required by Alabama Code Section 26-50-110(1) [sic].”
Valdez contends that it was error for the trial court to fail to find whether the decedent was exposed to coal-tar epoxy during his employment.
Pen correctly asserts that our Supreme Court has held that the standard of review in workmen’s compensation cases is a two-step process. First, this court must determine if any legal evidence supports the trial court’s findings. Second, if such evidence exists, this court must determine whether a reasonable view of the evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). Valdez correctly asserts that the trial court in workmen’s compensation cases is required to make findings of fact and conclusions of law, that these findings should encompass each and every issue presented to and litigated by the trial court, and that where this is not done the judgment should be reversed. Thompson & Co. Contractors v. Cole, 391 So.2d 1042 (Ala.Civ.App.1980).
Ala.Code 1975, § 25-5-111, provides:
“Where the employer and employee are subject to this chapter, the disablement or death of an employee caused by the contraction of an occupational disease, as defined in Section 25-5-110, shall be treated as an injury by accident, and the employee or, in case of his death, his dependents shall be entitled to compensation as provided in this article. In no case, however, shall an employer be hable for compensation by reason of the contraction of an occupational disease, as defined in Section 25-5-110, or for disability or death resulting therefrom unless such disease arose out of and in the course of the employment and resulted from the nature of the employment in which the employee was engaged.”
One of the decedent’s co-employees testified that they were using coal-tar on the job in question at the rate of twenty-five gallons per day for a period of approximately two weeks, and that the decedent was present during that time. Pen, however, produced the “daily reports” records of the company, which disclosed that coal-tar was used for a maximum period of only four days, and that the decedent is not reflected as being one of the people using coal-tar. Other testimony indicated that the decedent used another type of coating, which could be readily mistaken for coal-tar. From this testimony, the trial court could have made its finding that the “[e]vidence was in conflict about the alleged exposure to coal-tar epoxies_”
Dr. Perlman testified that coal-tar is a notorious carcinogen, containing benzene. Dr. Perlman further testified by deposition, “I don’t know whether it was asbestos, whether it was cigarettes. But I think all of them impacted on him to cause him to get lung cancer at this very young age.” When questioned specifically why he stated that he would not consider any level of exposure to a carcinogen to be perfectly safe, Dr. Perlman pointed out that “[the decedent] had a multitude of carcinogens acting on him. I think it’s impossible for anybody to say which one did it.” From this testimony, the trial court *401 could have concluded that whether the decedent was exposed to coal-tar, Valdez failed to prove that such exposure, if any, caused the disease and resulting death. Proof of contraction of an occupational disease does not remove the burden of proving that contraction of the disease arose out of and in the course of the employment and resulted from the nature of the employment. City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala.Civ.App.1975).
While the trial court did not specifically find whether there was an exposure to coal-tar, the ultimate issue was whether the disease and the decedent’s resulting death “arose out of and in the course of the employment and resulted from the nature of the employment in which the employee was engaged.” Ala.Code 1975, § 25-5-111. Based upon the foregoing evidence, we cannot say that the trial court erred in finding that Valdez failed to meet the burden of proving that the decedent’s lung cancer and resulting death arose out of and in the course of his employment and resulted from the nature of his employment.
On appeal, we do not consider the weight of the evidence nor the propriety of the trial court’s finding of fact. Wallace Roofing Co. v. Ganley, 442 So.2d 118 (Ala.Civ.App.1988). Our review of the evidence is to determine whether there is any legal support for the trial court’s conclusions. Cook Transports, Inc. v. Beavers, 528 So.2d 875 (Ala.Civ.App.1988). Such evidence exists and a reasonable view of that evidence supports the trial court’s judgment. Eastwood, supra. Our review of the evidence, or the lack thereof, supports the findings of fact and conclusions of law as stated by the trial court; consequently, we find no error, and we affirm the trial court’s judgment.
Based on the foregoing, we pretermit as unnecessary discussion of any further matters raised on appeal.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.