On Application for Rehearing

THOMPSON, Judge.
The opinion of January 5, 2001, is withdrawn, and the following is substituted therefor:
Corr Williams, Inc., the employer, appeals from a judgment awarding death benefits pursuant to Ala.Code 1975, § 25-5-60, to Jean Staggs, the surviving widow of its employee William R. Staggs. William Staggs was a 61-year-old truck driver who, on April 3, 1998, collapsed while sitting in a chair on the Corr Williams premises. Approximately 10-15 minutes earlier, Staggs had been unloading a truck with a coworker; the two men had worked together for approximately 35 minutes unloading the truck. After he collapsed, Staggs was taken by ambulance to Florence Hospital; he died shortly thereafter. *815 On his death certificate, the cause of death was listed as cardiac arrest.
Jean Staggs sued Corr Williams, seeking benefits pursuant to Ala.Code 1975, § 25-5-60. After conducting a bench trial, at which it heard ore tenus testimony, the trial court entered a judgment awarding benefits. Corr Williams appealed.
Corr Williams contends that the trial court’s finding that William Staggs’s death was due to a work-related injury was not supported by substantial evidence. Our review is governed by Ala.Code 1975, § 25-5-81(e)(2), which provides that when an appellate court reviews a trial court’s finding of fact, it will not “reverse” that finding “if that finding is supported by substantial evidence.” Our supreme court has interpreted the term “substantial evidence,” as it is used in the Workers’ Compensation Act, to mean “ ‘evidence of such weight and quality that fair-minded people in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
In its judgment, the trial court made the following pertinent findings:
“That William Staggs, at the time of his death by cardiac arrest, had a latent heart disease or infirmity, and that the physical activities of his employment, as previously stated, combined with said latent condition and thereby contributed to his death by cardiac arrest.
“That the physical activities performed by William R. Staggs immediately prior to his death exposed him to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives.”
The only evidence presented to the trial court was the testimony of Dr. Brad Ca-vender, a cardiologist; the deposition testimony of the emergency-room physician, Dr. Duff Austin, who had unsuccessfully attempted to resuscitate Staggs; and the testimony of Manuel Smith, Staggs’s coworker. Dr. Cavender had never treated William Staggs, but had reviewed his medical records. Dr. Cavender testified, based on his review of Staggs’s records, that Staggs, in 1992, had suffered from chest pain and had undergone some EKG studies and a stress test. Dr. Cavender stated that in 1992 William Staggs had been advised to have an arteriogram, but had declined to undergo this diagnostic procedure. Based on the records he reviewed, Dr. Cavender testified that, in his opinion, Staggs suffered from myocardial ischemia and hypertension and exhibited overinflated lungs, consistent with advanced obstructive pulmonary disease. Dr. Caven-der also reviewed medical records from January 1998, when William Staggs had gone to the MedPlus clinic with complaints of chest pain and congestion. At that time, Mr. Staggs reported a history of having smoked up until 1990 and of having used smokeless tobacco products since that time. The MedPlus records reflected a diagnosis of costochondritis and recommended a follow-up examination with a cardiologist for a stress test.[1] Dr. Caven-der testified that, in his opinion, to a reasonable degree of medical certainty, the tasks Staggs performed in the course of his employment immediately before his death were no more strenuous than walking from the parking deck into the hospital and in no way contributed to his death.
*816 The only time Dr. Austin treated Mr. Staggs was when he unsuccessfully attempted to resuscitate Mm in the emergency room. The only history Dr. Austin was able to obtain on Staggs was given to him by the emergency medical technicians who transported Staggs to the emergency room. They informed Dr. Austin that Staggs had appeared to be perfectly healthy, until he “sat in his chair and slumped over.” After Staggs’s death, Dr. Austin spoke briefly with Jean Staggs; she told him that her husband had been in good health all of his years. Jean Staggs also told Dr. Austin, however, that her husband had experienced some discomfort in his chest for the past three days and that, although she had encouraged him to seek medical help, he had refused, telling her that it “was only a little indigestion.” In response to a hypothetical question asking him, if the evidence showed that Staggs had participated in vigorous activity just before having the heart attack, whether that vigorous activity could be a contributing cause, Dr. Austin replied: “We’d have to assume that was a contributing factor.”
Manuel Smith, the coworker of William Staggs who had assisted Staggs in loading his truck shortly before he collapsed, testified as to the level of intensity of exertion required in that particular task. Smith testified that he and Staggs, working together, had loaded approximately 120 boxes onto Staggs’s track. When asked at trial about the weight of the boxes, Smith testified:
“We try to keep it between like eight and fifteen pounds. But you know, occasionally, it would be one that may weigh twenty pounds.... ”
Smith stated that he and Staggs, working together, loaded the boxes over a period of about 35 minutes. Smith testified that he could have loaded the truck, by himself, in 25 minutes. Smith stated that on the day in question, however, the task took 35 minutes for the two of them to complete, explaining, “[W]e were just loading it ... and talking crazy stuff and everything.” Smith testified that after he and Staggs finished loading the truck, they stood and talked for a few minutes. Then, Smith said, Staggs took his sack lunch and went into the computer room. Smith testified that 10 to 15 minutes later, Staggs collapsed in the computer room. With respect to nonaccidental injuries, our supreme court has stated:
“[I]n order to establish causation in a workers’ compensation case where the injury is nonaccidental, meamng that the injury was not caused by a sudden and unexpected external event, a claimant must satisfy a two-part causation test by producing substantial evidence establishing both (a) legal causation and (b) medical causation.”
Ex parte Trinity Indus., supra, 680 So.2d at 269. In order to establish legal causation, Jean Staggs, as the claimant, had to present evidence indicating that the risk or danger of a heart attack that her husband had faced in his job as truck driver was “materially in excess” of the heart-attack danger to which people are exposed in their everyday lives. For purposes of analysis, we assume, without deciding, that Jean Staggs met her burden of proving legal causation by producing substantial evidence showing that truck drivers who routinely perform vigorous activities in their duties of loading and unloading their rigs are exposed to a higher risk of having a heart attack than others are exposed to in merely living.
This assumption made, we turn to the closer question presented — whether Jean Staggs met her burden of establishing medical causation. Ex parte Trinity Indus., 680 So.2d at 269 (citing City of *817 Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala.Civ.App.1975)). In order to establish medical causation, Jean Staggs was required to “produce substantial evidence tending to show that the exposure to risk or danger proven in step one of the Howard test ‘was in fact [a] contributing cause of [her husband’s fatal heart attack].’ ” Ex parte Trinity Indus., 680 So.2d at 269.
The dispositive issue is whether Jean Staggs presented substantial evidence linking her husband’s fatal heart attack to the alleged cardiovascular stress to which he had been exposed in loading his truck on the morning of his collapse. We conclude that she did not. The only evidence she introduced to connect her husband’s heart attack to his duties at work was Dr. Austin’s testimony that if Staggs had engaged in vigorous activity immediately before his death, then “[w]e’d have to assume that was a contributing factor.” This statement clearly assumes facts that are not in evidence. Manuel Smith, the coworker who helped Staggs load his truck, said the truck-loading activity was a 35-minute session of carrying boxes weighing between 8 and 15 pounds, while “carry[ing] on a lot of crazy stuff’ and “just having fun.”
While we recognize that a preexisting heart condition does not preclude a recovery under the workers’ compensation statute, we find in this record no substantial evidence indicating that Staggs’s physical exertion in loading his truck was a cause contributing to his fatal heart attack. As our supreme court stated in Ex parte Trinity Industries, supra, “The Howard ‘legal causation’ standard was intended to act, and does act to prevent employers from being unfairly saddled with the cost of being made the absolute insurer of an employee’s health.” 680 So.2d at 267. Under that standard, if an employee suffers injury or death, based on a natural cause, one cannot recover workers’ compensation benefits for that injury or death simply because it (the “disabling event”) occurred in the workplace. Id.
The judgment of the trial court is reversed, and this action is remanded for the trial court to enter a judgment consistent with this opinion.
APPLICATION FOR REHEARING GRANTED; OPINION OF JANUARY 5, 2001, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
YATES, P.J., dissents.

. It is undisputed that William Staggs never followed up with a cardiologist for this recommended procedure.