797 So.2d 1093 (2001)
Allen ODEN
v.
GULF STATES STEEL, INC.
2991094.
Court of Civil Appeals of Alabama.
April 27, 2001.
Donald R. Rhea of Rhea, Boyd & Rhea, Gadsden, for appellant.
James W. McGlaughn of Inzer, Haney & McWhorter, P.A., Gadsden, for appellee.
CRAWLEY, Judge.
In January 1998, Allen Oden (the "worker") sued Gulf States Steel, Inc. (the "company"), for workers' compensation benefits, alleging that he had been injured in the line and scope of his employment and *1094 that the injury had caused him to suffer a permanent disability. Following an ore tenus hearing, the trial court held that the worker was not entitled to any benefits. The worker appeals.
The worker claimed that his injury resulted from
"operating a crane and experiencing substantial jarring, jolting and trauma to his cervical spine as a result of the crane running off tracks dropping heavy loads and otherwise causing the [worker] to experience trauma to his cervical spine."
We conclude that the worker's injury, repetitive trauma to the cervical spine, is a
"gradual deterioration or cumulative physical stress disorder[ ] which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the [worker's] employment."
Ala.Code 1975, § 25-5-81(c). See Ex parte Russell Corp., 725 So.2d 264 (Ala. 1998); Zeanah v. Stewart Animal Clinic, P.C., 752 So.2d 505 (Ala.Civ.App.1999); BE & K, Inc. v. Weaver, 743 So.2d 476 (Ala.Civ.App.1999); and Dun & Bradstreet Corp. v. Jones, 678 So.2d 181 (Ala.Civ.App. 1996).
The worker argues that he presented clear and convincing evidence indicating that his injury arose out of and in the course of his employment. The worker presented expert medical evidence that indicated his work might have, or possibly had, contributed to his condition. The company presented evidence indicating that the worker was malingering and that the worker had congenital spinal problems that were not work-related. We conclude that the worker's evidenceevidence indicating that he might have had, or possibly had, a work-related condition when compared with the company's evidenceevidence indicating that the worker's problems were not work-related or were exaggeratedcannot be considered "clear and convincing evidence" indicating that his injury arose out of and in the course of his employment. Therefore, we affirm the trial court's judgment denying him benefits.
AFFIRMED.
PITTMAN, J., concurs.
MURDOCK, J., concurs specially.
THOMPSON, J., concurs in the result.
YATES, P.J., dissents.
MURDOCK, Judge, concurring specially.
The dissent does a thorough job of reviewing the evidence favoring the worker's claim for workers' compensation benefits. I agree that there is substantial evidence from which the trial court could have found in favor of the worker.
As the majority notes, however, there also is substantial evidence in the record from which the opposite conclusion could have been, and was, drawn by the trial court. The worker claims compensation for an injury resulting from cumulative physical stress. Under Ala.Code 1975, § 25-5-81(c), the worker must prove by "clear and convincing evidence" that such an injury arose out of and in the course of his employment. Upon a review of all of the evidence, it is my opinion that the trial court could have concluded that this burden was not met with sufficient credible evidence. Similarly, the trial court could have found that the evidence as to the extent of the alleged disability was not substantial and credible. The trial court specifically found:
"[M]uch of the employee's testimony was not credible, based on observation of demeanor, comparison with records *1095 and other substantiated testimony and the like. Because much of the plaintiff's case is built upon his own testimony and the testimony of doctors relying on the employee's history and the like, the employee cannot under the present testimony, sustain his burden of proof as to entitle him to recovery under the workers' compensation act of the state of Alabama."
In an ore tenus, nonjury proceeding, "the trial court is free to choose which evidence it believes, and when conflicting evidence is presented, the findings of the trial court are conclusive, if supported by the evidence." Ivie v. Winfield Carraway Hosp., 678 So.2d 1190, 1193 (Ala.Civ.App. 1996); accord Chancey v. J.Q.H., Inc., 724 So.2d 548 (Ala.Civ.App.1998). Nor can this court reweigh the evidence in such a case. Ex parte Golden Poultry Co., 772 So.2d 1175, 1177 (Ala.2000).
I therefore concur.
YATES, Presiding Judge, dissenting.
Oden was first employed by Gulf States in April 1977. In August 1991, he was involved in an automobile accident. He received chiropractic treatment from Dr. Michael McClellan after the accident. Oden first visited Dr. McClellan on August 21, 1991, complaining of sharp pain in his right shoulder, trapezius, and pectoral region, which radiated into his right arm. Dr. McClellan's examination revealed muscle spasms in the trapezius and right scapula area and a decrease in the cervical range of motion, with bilateral pain. Dr. McClellan's examination of Oden on September 13, 1991, again revealed a decrease in the cervical range of motion, with pain. Dr. McClellan last saw Oden on October 11, 1991.
Oden worked as a "pit-crane operator" from 1986 to the early part of 1996. As a pit-crane operator, he operated an over-head crane that is attached to rails that are suspended above the ground. The crane moves back and forth on these rails, lifting and lowering the payload below. Because of a change in the union agreement, he was "rolled off" that job in early 1996 and was replaced by an older, less experienced employee. Oden was transferred to the "slab yard" and worked there as a "yard-crane operator," which is a lower-paying position than pit-crane operator.
Oden testified that the rails on the yard cranes were "wavy" and that the wheels on the yard cranes would come untracked from the center of the rails and that this would cause the flange of the wheel to "run up" on the edge of the rail and then suddenly drop approximately one to two inches. The drop, he said, resulted in a sudden jolt. Oden stated that the yard cranes were "bouncing and beating [his] brains out." He testified that this would occur approximately 12 times during a shift. He alleged in his complaint that because of the jolting of his cervical spine as a result of operating the crane he began to experience weakness and discomfort in his upper extremities and some numbness in his left upper extremity, with pain radiating into his left upper extremity. Oden testified that he informed Donnie Richardson, his supervisor, of the problems he was having with his cervical spine as a result of operating the cranes.
Oden was initially treated by Dr. William Weaver, the Gulf States doctor, who referred him to Dr. Martin Jones on January 27, 1997. Oden complained of neck pain, bilateral arm pain, and pain between his shoulders, which he said had progressively worsened over the previous month. Oden informed Dr. Jones that he had changed jobs at Gulf States and that he thought his problems were work related. He also informed Dr. Jones that he had *1096 previously injured his neck in the 1991 automobile accident. Dr. Jones's physical examination revealed that Oden had some loss of range of motion in his neck and some loss of strength in his triceps muscle. Dr. Jones ordered an MRI, an EMG nerve-conduction study, and a myelogram, and he prescribed medication. Dr. Jones next saw Oden on February 20, 1997. At that time, the nerve-conduction study was normal; however, the MRI indicated a disc protrusion with a spur at the C5-6 level. The MRI also indicated some mild degenerative changes in Oden's cervical spine. The myelogram also revealed the disc protrusion at the C5-6 level, with no nerve compression. Dr. Jones testified that he recommended an epidural block and suggested conservative treatment.
Oden reported to the Gulf States dispensary on April 10, 1997, stating that he was unable to wear his hard hat because of the pain in his neck. Although the dispensary notes indicate that Oden had reported an incident that had occurred at home, an incident in which he fell several feet from a ladder, Oden testified that he did not recollect falling from a ladder at home.
Oden last saw Dr. Jones on May 8, 1997, complaining of neck and left-arm pain. Dr. Jones testified that he recommended continuing Oden on conservative nonsurgical treatment. Dr. Jones did not take Oden off work and did not place any restrictions on him.[1]
Dr. Jones testified that it was possible that the disc protrusion located at the C5-6 level was related to the 1991 automobile accident. He further stated that the neck pain Oden was experiencing could be muscular in nature or could be related in part to the disc protrusion. Dr. Jones testified that it was possible that wearing a hard hat over an eight-hour period could aggravate Oden's neck symptoms. He also testified that it was possible that a fall from a ladder could cause a mild or asymptomatic condition to worsen or to become symptomatic. He further testified that trauma could aggravate an underlying condition and thereby cause it to become symptomatic.
Oden was next treated by Dr. Gus Prosch, Jr., on June 23, 1997. Dr. Prosch diagnosed Oden with Lieou Barre Syndrome, which is a stretching of the cervical ligaments. Dr. Prosch noted that Oden's job, which caused a jarring of the cervical spine, was not conducive to the adequate healing of his condition. Dr. Prosch treated Oden with injections and released him to return to work with no restrictions, in August 1997.
Oden was scheduled to return to work in August 1997. As part of a return-to-work physical examination given on August 22, 1997, he was given a drug test, which he failed. He was terminated from Gulf States on October 13, 1997, for violation of its substance-abuse policy.
Oden was seen by Dr. Paul Muratta, a pain-management specialist, on October 28, 1997. Dr. Muratta said that at that time Oden complained of a stabbing pain "in the middle of his back up near the base of his neck." The pain would radiate into both arms, causing numbness and tingling in the hands and fingers. Oden indicated to Dr. Muratta that his pain had begun as a result of being jolted while operating the cranes at work. Dr. Muratta's examination revealed tenderness to palpation over the C5-7 vertebrae, tenderness in the trapezius and rhomboid musculature on both sides, and a decreased range of motion in *1097 the cervical spine. He concluded that Oden most likely had a bulging disc at the C5-7 levels. His treatment plan for Oden included medications, physical therapy, and epidural steroid injections.
Dr. Muratta testified that the mild central disc protrusion at the C5-6 level, which was indicated by the MRI and myelogram ordered by Dr. Jones, could be the source of Oden's symptoms. He stated that Oden's symptoms could be aggravated by stress or movement of the cervical spine, and he testified to a reasonable degree of medical certainty that the history related to him by Oden of being jarred and jolted while operating a crane could cause the disc protrusion found on the MRI and myelogram.
Oden was seen by Dr. Muratta on June 12, 1998. Dr. Muratta's assessment of Oden at that time was cervical disc bulge with radiculopathy, myofascial pain syndrome, and headache occipital neuralgia. Dr. Muratta again related the cervical disc bulge to Oden's employment as a crane operator. Dr. Muratta testified that myofascial pain syndrome is a condition in which muscle and tissue become irritated to the point that they "ball up" into distinct trigger points. Dr. Muratta related the myofascial pain syndrome to the cervical disc bulge. He stated that headache occipital neuralgia is a condition in which the occipital nerves located in the back of the neck and head become irritated and cause headaches. He again related this condition to the bulging cervical disc.
Dr. Muratta testified that he has continued Oden on conservative treatment, including injections, but that surgery was a possible option. He testified that Oden's condition is chronic and that any kind of increase in activity, including jarring activity or weight lifting, will exacerbate his pain. He restricted Oden from repetitive activities involving the upper extremities.
Richardson testified that he was Oden's supervisor during 1996. Richardson stated that on occasion a crane would jump its track and cause a jolt to the operator. He also testified that during the period in which Oden alleges he was injured there was a problem with one crane's "holding its load." He stated that that crane would release its load quickly, in such a way as to cause a jar to the crane and the crane operator. Richardson stated that Oden had informed him before 1996 that he had some neck problems that had resulted from an automobile accident. Richardson testified that Oden had informed him that operating the crane aggravated the problem with his neck.
Richardson testified on cross-examination that Oden was upset about being "rolled off" the pit crane and replaced by an older employee and that Oden had made certain "get-even type of statements" toward Gulf States for transferring him from the pit cranes to the yard cranes. At the time of the hearing, Oden was 43 years old.
Oden does not allege that his injury resulted from a single traumatic event occurring at work; rather, he alleges that his injury resulted from the cumulative trauma of having his cervical spine jarred while operating a crane during the fall of 1996. This is consistent with Dr. Jones's records, which indicate that Oden's complaints of pain became more severe over the course of a month.
For an injury to be compensable, it must be "caused by an accident arising out of and in the course of the employee's employment. § 25-5-51, Ala.Code 1975. The phrase "arising out of requires a causal connection between the injury and the employment. Dunlop Tire & Rubber Co. v. Pettus, 623 So.2d 313 (Ala.Civ.App.1993). The phrase "in the course of the employee's *1098 employment" refers to the time, place, and circumstances under which the accident occurred. Id. To establish causation in a workers' compensation case where the injury is nonaccidental, i.e., where the injury was not caused by some sudden and unexpected external event, an employee must satisfy a two-part causation test by producing substantial evidence establishing both (a) legal causation and (b) medical causation. Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996). See also City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala.Civ.App.1975). To prove "legal causation," one need only establish that "the performance of his or her duties as an employee exposed him or her to a `danger or risk materially in excess' of that to which people are normally exposed in their everyday lives." Ex parte Trinity Indus., Inc., 680 So.2d at 267, quoting Howard, 55 Ala.App. at 705, 318 So.2d at 732. To establish medical causation, a claimant "must produce substantial evidence tending to show that the exposure to risk or danger proven in step one of the Howard test `was in fact [a] contributing cause of the injury' for which benefits are sought." Ex parte Trinity Indus., Inc., 680 So.2d at 269, quoting Howard, 55 Ala. App. at 706, 318 So.2d at 732. Medical causation may be found by the trial court without testimony from medical doctors. Ex parte Price, 555 So.2d 1060 (Ala.1989). The totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation. U.S. Steel, a Division of USX Corp. v. Nelson, 634 So.2d 134 (Ala.Civ.App.1993). Additionally, cases involving injuries that have allegedly resulted from cumulative physical stress shall be compensable only upon "a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment." § 25-5-81(c), Ala.Code 1975. Finally, we are ever mindful that "the Workers' Compensation Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee." Sheppard v. Massey Hauling Co., 726 So.2d 682, 684 (Ala.Civ. App.1998).
After carefully reviewing the record in this case, I conclude that the trial court erred in entering a judgment denying Oden workers' compensation benefits. The evidence indicates that Oden had received chiropractic treatment for his cervical neck and shoulder area after an automobile accident in 1991. Nothing in the record indicates that Oden had missed any substantial amount of time from work because of this injury. Oden testified that in the fall of 1996 he began experiencing problems with his neck and shoulders because of the sudden jarring and jolting he received to his cervical spine while operating the crane when it became untracked. This testimony is consistent with the testimony given by his supervisor, Richardson, who stated that the crane would occasionally jump its track and cause a sudden jolt to the operator. Richardson also testified that Oden had informed him that operating the crane was aggravating a problem he had had with his neck since a 1991 automobile accident.
An MRI and a myelogram ordered by Dr. Jones revealed a central-disc protrusion at the C5-6 level. In addition to noting the disc protrusion, Dr. Muratta also diagnosed Oden with myofascial pain syndrome and headache occipital neuralgia. Dr. Muratta attributed the disc protrusion to Oden's employment and the myofascial pain syndrome and headache occipital neuralgia to the disc protrusion. Additionally, Dr. Prosch diagnosed Oden with stretched cervical ligaments and stated that his employment as a crane operator was not conducive to his adequate healing.
*1099 The main opinion points out that Gulf States presented evidence that Oden had congenital spine problems that were not work related. However, it is well settled in this state that "`[a]n employee who has a pre-existing condition is not precluded from collecting workers' compensation benefits if the employment aggravates, accelerates, or combines with, a latent disease or infirmity to produce disability.'" McCoy v. Wrangler, Inc., 710 So.2d 1251, 1252-53 (Ala.Civ.App.1997), quoting Dunlop Tire Corp. v. Allen, 659 So.2d 637, 639 (Ala.Civ.App.1995) (overruled on other grounds). Preexisting conditions that are aggravated, irritated, or exacerbated by the employment are compensable under the Act. McCoy, supra. Further, the employment need not be the sole cause of the injury for which benefits are sought, so long as it is at least a contributing cause of the injury. Ex parte Trinity Indus., Inc., supra.
I conclude that Oden presented evidence that required a finding that his employment as a crane operator at least contributed to his injury; therefore, I must respectfully dissent from the main opinion.
NOTES
[1] Although Dr. Jones testified that he did not take Oden off work, Oden was, in fact, taken off work by Dr. Weaver in April 1997.