On Application for Rehearing

CRAWLEY, Judge.
The opinion of this court issued on February 15, 2002, is withdrawn, and the following is substituted therefor.
Betty Fae Hill (the “worker”) was employed by WestPoint Stevens, Inc. (the “company”), as a weaver. While working her normal 12-hour shift on September 8, 1995, the worker stooped to repair some broken ends on the warp and, upon standing up, felt a shooting pain in her back. As she attempted to walk around the loom, her legs “just quit.” She reported to her supervisor, Phil Johnson, that her back hurt and that she needed to go home; he walked her to her car.
The worker sought treatment from Dr. W.J. Dailey, who had treated her for pain associated with back, neck, and left-shoulder injuries that the worker had sustained in a 1989 motor-vehicle accident. Dr. Daily diagnosed the worker with chronic neck and shoulder pain of a muscular nature, lumbar disc disease, cervical disc disease, and facet joint sclerosis. After several months of conservative treatment with pain medication and an orthopedic consultation that ruled out the need for surgery, the worker and Dr. Dailey concluded that she should not return to work.
The worker sued for worker’s compensation benefits, arguing that she suffered either an accidental injury or, in the alternative, a cumulative-stress injury, resulting in her disability. The trial court awarded the worker benefits, stating in its judgment that the worker had suffered an accidental injury on September 8, 1995. The company appeals, arguing that the evidence does not support the trial court’s conclusion that the worker suffered an accidental injury. The company specifically argues that the worker’s injury is a “non-accidental” cumulative-stress injury, and, therefore, that the worker was required to prove, by clear and convincing evidence, see Ala.Code 1975, § 25-5-81(c), that her employment “ ‘expose[d] [her] to a danger or risk materially in excess of that to which people not so employed are exposed [ordinarily in their everyday lives].’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 266 (Ala.1996) (quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 705, 318 So.2d 729, 732 (Civ.1975)).
*73 Our review of this case is governed by the Workers’ Compensation Act, which states in pertinent part: “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25-5-81(e)(2). Therefore, this court “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996). Further, the trial court’s finding of fact is supported by substantial evidence if it is “supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and Ala.Code 1975, § 12 — 21—12(d)). Our review of legal issues is without a presumption of correctness. Ala.Code 1975, § 25-5 — 81(e)(1); see also Ex parte Trinity Indus., 680 So.2d at 268.
The worker testified that she was injured when she stood up from a stooping position and felt a shooting pain in her back. She further described how her legs “just quit” as she walked around the loom and how she had to catch herself on the rack that holds the filling to keep from falling. She admitted that she had had continuing back pain since a 1989 motor-vehicle accident; however, she explained that she could work despite her pain until the night she was injured at work and that the pain from the 1995 work incident was different than the pain associated with the 1989 motor-vehicle accident. She testified that on September 8 she was assigned to supervise 20-plus looms. She stated that her job required a “lot of walking, stooping, bending, stretching, reaching, a lot of physical [activity].” She admitted that she had experienced increased back pain in the days before September 8 and that she had already asked her supervisor about the possibility of being relieved by another weaver on September 8 because she was experiencing back pain. She testified that she reported the incident to her supervisor, Phil Johnson, but said that she told him she did not know if her pain was because of something she had done at work or because of the 1989 motor-vehicle accident.
Johnson testified that the worker had not reported a specific incident concerning her back, and, in fact, he said that she denied that she had done anything on the job to injure herself when he specifically questioned her. He further testified that a supervisor must fill out an accident report if a worker is injured on the job. He said that, based on what the worker had reported to him, he did not believe he needed to complete an accident report on September 8.
Terri Hattaway, a former coworker of the worker, testified about the job duties of a weaver. Hattaway testified that the job involved a lot of “bending, bending over, propping up on the loom, leaning over, constantly pacing back and forth in front of the looms.” She stated that the job strained the back and that it put pressure on the lower back. She explained that, if the job was not running well, “you are constantly bending.” She said that the job required a worker to assume awkward body positions and that the work was, in her opinion, repetitive.
The company offered the records of several doctors as evidence. However, the records of Drs. Richard A. Nyako, R.M. Sabet, R.E. Rydell, and William E. Adams were not properly authenticated and were not admitted into evidence. The office *74 notes of Dr. R.M. Huberdeau were contained in the certified copies of the records on file at the Clark-Holder Clinic.
Dr. R.M. Huberdeau first saw the worker in February 1995. He ordered an arth-rogram of the worker’s left shoulder; the results were normal. He also ordered an MRI of her cervical spine, which revealed a herniated disc at the C5-C6 level; the disc was compressing the cervical cord slightly. He referred the worker to Dr. William E. Adams at this time. Dr. Hu-berdeau saw the worker again in October and November 1995. His records indicated that the worker had a severe narrowing of disc space L5-S1 and sclerosis of facet joints L5-S1.
The worker presented the deposition testimony of her treating physician, Dr. W.J. Dailey, a specialist in internal medicine. Dr. Dailey testified that he had diagnosed the worker as suffering from chronic neck and shoulder pain of a muscular nature, lumbar degenerative disc disease, cervical degenerative disc disease, and facet joint sclerosis, all of which he opined were worsened by prolonged standing, reaching, and lifting.
He testified that he first saw the worker on November 24, 1993. He said that she reported that her symptoms, which included lower-back pain, neck pain, and shoulder pain, resulted from a motor-vehicle accident in 1989. Dr. Dailey testified that he had reviewed the worker’s medical records and that she had been diagnosed with cervical disc disease, lumbar disc disease, and lumbar spondylolisthesis. According to Dr. Dailey, the worker’s physical condition was unlikely to change, but, he said, he believed that her pain could be reduced. He reported that he saw her again on March 11, 1994, and that her condition at that time was basically unchanged.
The worker next saw Dr. Dailey on October 4, 1994, for complaints associated with pain in her neck and left shoulder. The worker returned to Dr. Dailey on November 4, and, upon the worker’s request, Dr. Dailey prescribed a transcuta-neous electrical nerve stimulator (“TENS”) unit. On December 7, the worker again saw Dr. Dailey, complaining of pain radiating down her left thigh. At that time, according to the records, she reported continued neck and shoulder pain; however, she related achieving pain relief in her neck and shoulder with the TENS unit.
The worker saw Dr. Dailey in February 1995, again reporting pain in her neck and shoulder. The records from a follow-up appointment in August 1995 do not reflect any particular reports of pain. Dr. Dailey testified, however, that the worker had reported to him at that August visit that work had been aggravating her symptoms; he testified that he modified her restrictions to prohibit lifting anything that weighed more than 21 pounds. The worker saw Dr. Dailey again on September 12, 1995, after she experienced the sharp, stabbing pains in her back and the weakness in her legs at work on September 8.
According to Dr. Dailey, the worker did not report that a specific event at work had triggered her increased pain, but rather, he said, she told him that work had aggravated her existing symptoms. His opinion was that the worker’s condition had worsened more quickly than he would have expected because of her work at the company. He also opined that the worker’s condition would worsen if she returned to work at the company.
Dr. Peter Casten, who specializes in occupational medicine, testified for the company. He examined the worker on November 30, 1998, after reviewing her medical records. He specifically testified that he had compared her two MRI scans; he testified that the worker’s *75 physical condition as reflected on the 1989 MRI was unchanged on the 1995 MRI. He opined, based on his physical examination coupled with his review of her medical records, that the worker suffered from intermittent pinching of the left nerve root at L5-S1 and that she had a restriction in the range of motion of her neck and back. Based on his review of a videotape of a weaver performing the same job the worker performed, Dr.' Cas-ten stated that the job of weaver was not a job that would typically produce a back injury.
Jerry Woods, a physical therapist and a “certified ergonomics associate,” performed an analysis of the worker’s job as a weaver. He observed a man working on the same type machine as the worker worked on and he videotaped the man for later study. He explained that back injuries are related, in most instances, to jobs involving heavy lifting or repeated bending, twisting, and squatting. Although the job of weaver, according to Woods, involved infrequent stooping and squatting and occasional reaching, he opined that the job was in the light category of jobs and that it was not a job that posed a considerable risk for back injury.
The worker’s evidence tended to prove that her work was physically demanding and that it could cause back pain, that she suffered from a preexisting back injury that caused her pain but did not prevent her from working, and that Dr. Dailey had concluded that the deterioration of the worker’s condition between May 1995 and August 1995 was caused by her work at the company. However, the company’s evidence contradicted the worker’s assertions that her job was such that a back injury was likely to result from it. In addition, the company rebutted the worker’s testimony that an accident occurred on September 8; the worker admitted that she had been experiencing worsened back pain in the months, and even in the hours, before the accident.
We agree with the company’s argument that the worker did not suffer an “accident” as that term is used in workers’ compensation law. See Ala.Code 1975 § 25-5-1(7) (defining the word “accident” as “an unexpected or unforeseen event, happening suddenly and violently”); Ex parte Trinity Indus., Inc., 680 So.2d 262, 266 n. 3 (Ala.1996) (explaining that an accident is a “sudden and traumatic external event”). Instead, the worker appears to have suffered a “nonaccidental,” cumulative-stress injury. As the company correctly argues, the worker, to succeed in her action for benefits, must establish causation — both medical and legal' — by clear and convincing evidence. See Ala.Code 1975, § 25-5-81(c) (stating that cases involving a gradual deterioration or cumulative-physical-stress disorders require clear and convincing proof). To establish legal causation, because she suffered an “nonac-cidental” injury, the worker must present clear and convincing evidence that she was exposed to a “ ‘danger or risk materially in excess’ of that danger to which all persons are ordinarily exposed in their everyday lives.” Ex parte Trinity Indus., 680 So.2d at 269 (quoting City of Tuscaloosa v. Howard, 318 So.2d at 732). She must also establish medical causation by presenting clear and convincing evidence that such exposure “ ‘was in fact [a] contributing cause of the injury1 for which benefits are sought.” Id. Because the trial court did not consider whether the worker presented clear and convincing evidence of exposure to a risk “materially in excess” or whether such exposure was a contributing cause of her injury, we must reverse the judgment in this case and remand the cause to the trial court for it to make those necessary findings based upon the evidence presented at trial. See Aliceville Cotton Mills, Inc. v. Manning, 752 So.2d 520, 521 (Ala.Civ.App.1999) (reversing and *76 remanding for the trial court to make the necessary findings in an “nonaceidental” injury case).
OPINION OF FEBRUARY 15, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
YATES, P.J., dissents.